STATE OF CONNECTICUT *v.* PATRICIA CARNEGIE

KING, C. J., ALCORN, HOUSE, COTTER and THIM, Js.

Argued May 7—decided June 3, 1969

*David M. Reilly, Jr.,* with whom was *Anthony J. Lasala,* for the appellant (defendant).

*David B. Salzman,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's at-

torney, and *Robert K. Walsh,* assistant state's attorney, for the appellee (state).

THIM, J. A jury found the defendant guilty of forgery in violation of § 53-346 of the General Statutes and of obtaining money by false pretenses in violation of § 53-360 of the General Statutes. The principal issue on this appeal is whether an in-court identification of the defendant was based on a pretrial identification which was claimed to have been made in a manner violative of due process of law.

The defendant has assigned error in the finding and seeks to have this court incorporate several paragraphs of the draft finding into the finding. In a jury case, a finding serves the limited purpose of setting forth such of the facts as are needed in order fairly to test the rulings of the court and the correctness of the charge. Practice Book § 635; *Morgillo* v. *Evergreen Cemetery Assn.,* 152 Conn. 169, 172, 205 A.2d 368. No corrections can be made to the finding which would benefit the defendant in presenting the questions of law which she wishes to have reviewed by this court.

# I

It is the defendant's claim that the trial court committed error by refusing to strike evidence of a bank teller's identifications of the defendant as the woman who had cashed a forged check. This claim is premised on the contention that a pretrial confrontation between the identifying witness and the defendant at the New Haven police station was so suggestive and unfair as to constitute a denial of due process. We do not agree with this claim for reasons hereinafter stated.

On November 8, 1966, a Negro woman presented

a $100 check for payment at the drive-in window of the First New Haven National Bank. The check was made out to cash, was drawn on the account of Charles and Louise R. Endel and bore the endorsements of Louise R. Endel and Dorothy Jones. The bank teller, Miss Barbara Olson, knew the Endels, and she asked the woman presenting the check how they were. The woman explained to the bank teller that she worked for the Endels and that they were fine. After cashing the check, the bank teller wrote the registration number of the woman's car on its reverse side. The bank teller observed that the woman was a Negro. Moreover, she felt sorry for the woman because she appeared too young and attractive to be working for the Endels as a maid, and this concern caused her to remember the woman's face.

About a month after this incident, Mrs. Endel discovered that her signature on the $100 check was a forgery. An investigation revealed that the car bearing the registration number which had been written on the reverse side of the check was owned by the defendant's husband. Furthermore, it was discovered that the defendant had worked with Mrs. Endel at the New Haven Public Library for several months and that Mrs. Endel often carried blank checks in her pocketbook, which she would leave in various places in the library.

On February 6, 1967, the bank teller was requested to go to the New Haven police station in order to determine whether the defendant was the woman who had cashed the $100 forged check. While she was sitting in the waiting room at the police station, the bank teller recognized the defendant as soon as she walked into the waiting room. Shortly thereafter, the bank teller was taken to a

one-way mirror, and, as she looked into a small room, she formally identified the defendant as the woman who had cashed the forged check. At the time of this identification, the defendant was alone in the room. She was arrested about a week after the confrontation at the police station.

At the trial, the bank teller identified the defendant as the woman who had presented the forged check. Furthermore, she testified that she had identified the defendant previously at the police station. Thereafter, the defendant, in the absence of the jury, moved to strike the bank teller's identifications made at the police station and in the courtroom. The trial court refused to strike the bank teller's identifications of the defendant on the ground that the confrontation at the police station did not violate due process of law.

The United States Supreme Court has held that a postindictment, pretrial lineup is such a critical stage in a criminal prosecution that under the sixth amendment a suspect is entitled to the aid of counsel. *United States* v. *Wade,* 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149; *Gilbert* v. *California,* 388 U.S. 263, 87 S. Ct. 1951, 18 L. Ed. 2d 1178. This rule is to be applied prospectively; it does not, therefore, apply to lineups which were conducted before June 12, 1967. *Stovall* v. *Denno,* 388 U.S. 293, 87 S. Ct. 1967, 18 L. Ed. 2d 1199. Nevertheless, a pretrial confrontation which was unnecessarily suggestive and conducive to irreparable mistaken identification is a violation of due process, and a pretrial identification which resulted from such a confrontation is constitutionally inadmissible as evidence. *Foster* v. *California,* 394 U.S. 440, 89 S. Ct. 1127, 22 L. Ed. 2d 402; *Stovall* v. *Denno,* supra. This latter rule applies to confrontations for identification pur-

poses which occurred before June 12, 1967. Whenever the trial court has determined that a pretrial confrontation was unconstitutional, an in-court identification of the defendant is admissible only if the state establishes that it is not based on or tainted by the unconstitutional confrontation. *United States v. Wade,* supra, 240, 242; *Gilbert* v. *California,* supra, 272.

Although the United States Supreme Court has condemned the practice of showing a suspect singly to a witness for identification purposes, that of itself does not amount to a denial of due process of law. *Biggers* v. *Tennessee,* 390 U.S. 404, 88 S. Ct. 979, 19 L. Ed. 2d 1267, rehearing denied, 390 U.S. 1037, 88 S. Ct. 1401, 20 L. Ed. 2d 298; *Stovall* v. *Denno,* supra; *Marden* v. *State,* 203 So. 2d 638 (Fla.); *People* v. *Speck,* 41 Ill. 2d 177, 242 N.E.2d 208; *State* v. *Singleton,* 253 La. 18, 215 So. 2d 838; *Commonwealth* v. *Bumpus,* 354 Mass. 494, 238 N.E.2d 343; *State* v. *Matlack,* 49 N.J. 491, 498, 231 A.2d 369; *State* v. *Simmons,* 98 N.J. Super. 430, 437, 237 A.2d 630; *Hancock* v. *State,* 430 S.W.2d 892 (Tenn. Crim. App.). The United States Supreme Court has upheld two convictions where single suspects were shown to identifying witnesses. *Biggers* v. *Tennessee,* supra; *Stovall* v. *Denno,* supra. In order to determine whether a pretrial confrontation amounted to a violation of due process, it is necessary to consider the totality of the circumstances. *Foster* v. *California,* supra; *Stovall* v. *Denno,* supra.

Viewing the totality of the circumstances in this case, we conclude that the court was correct in ruling that the single showing of the defendant for identification purposes was not a violation of due process. The court's ruling was a reasonable one because the record does not indicate that the bank

teller was coached, preconditioned, or influenced by suggestion to identify the defendant as the woman who had cashed the forged check. There is no indication that the police had a desire to deal unfairly with the defendant, and she would have been free to leave the police station if she had not been identified. The bank teller testified that she had a distinct recollection of the woman who cashed the check owing to the fact that she felt sorry for the woman because she found it necessary to work for the Endels as their maid. In view of the fact that the registration number on the reverse side of the check was traced to the defendant's husband and that the defendant had worked with Mrs. Endel, it is most unlikely that showing the defendant singly to the bank teller resulted in a mistaken identification. The trial court permitted full cross-examination of all the relevant facts concerning the pretrial identification, and there was ample cross-examination on all matters relating to the weight to be accorded to the in-court identification. Hence, the trial court did not commit error by refusing to strike the evidence of the bank teller's identification at the police station or by allowing her to identify the defendant in the courtroom.

## II

In view of our decision that the court properly allowed the bank teller's in-court identification of the defendant, there is no merit to the defendant's claim that the verdict was against the evidence. No useful purpose would be served by summarizing all of the evidence which pointed to the defendant as the woman who had cashed the forged check. It suffices to note that the evidence was sufficient to justify a conclusion by the jury that the defendant

was guilty beyond a reasonable doubt. See *State* v. *McGinnis*, 158 Conn. 124, 130, 256 A.2d 241.

### III

The defendant claims that she was denied her constitutional right to have the assistance of counsel when she was shown singly to the bank teller for identification purposes. We do not agree with this claim. As we have previously stated, the defendant was not entitled to counsel under the *Wade* and *Gilbert* cases because they do not apply to confrontations which occurred before June 12, 1967. Nor did the defendant have a right to counsel under the rule of such cases as *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, and *Escobedo* v. *Illinois,* 378 U.S. 478, 84 S. Ct. 1758, 12 L. Ed. 2d 977. These two cases are based on the privilege against self-incrimination, and they do not apply in the instant case. *United States* v. *Wade,* 388 U.S. 218, 221, 87 S. Ct. 1926, 18 L. Ed. 2d 1149.

### IV

The defendant attempts to gain a reversal of the judgment appealed from on the ground that she was denied equal protection of the law. The gravamen of this claim is that other Negro females resembling the defendant did not appear in a lineup with her at the police station. The New Haven police department customarily asked females who worked in the police station to participate in lineups. There were no Negro females employed at the police station who could have appeared in a lineup with the defendant. On the other hand, the defendant claims that there were Caucasian females available who could have participated in a lineup. Thus, the defendant con-

cludes that only white female suspects appear in a lineup at the New Haven police station and they are not exposed to the risks which inhere in a single showing to identifying witnesses; Negro females, on the other hand, are shown singly.

There is no merit to the defendant's claim that she was denied equal protection of the law. The defendant has shown that there were no other Negro females who worked at the New Haven police station who could have appeared in a lineup with her at the time of the confrontation at the police station. This does not amount to a showing of discriminatory enforcement which would warrant the reversal of a conviction under the rule of *Yick Wo* v. *Hopkins,* 118 U.S. 356, 6 S. Ct. 1064, 30 L. Ed. 220.

## V

The defendant claims that the trial court committed error by excluding evidence of her willingness to take a lie-detector test. She did not seek to use this evidence for substantive purposes but rather to rehabilitate her credibility after the state had introduced evidence showing that she had a prior conviction of forgery.

The court did not commit error by excluding evidence of the defendant's willingness to take a lie-detector test. An unfavorable result of a lie-detector test would not have been admissible against the defendant because the test is not recognized as sufficiently reliable and accurate as a means of ascertaining the truth. Note, 23 A.L.R.2d 1306, 1308 § 2. Hence, evidence of the defendant's willingness to take a lie-detector test was properly excluded because of its almost complete lack of probative value and because of its self-serving character. Note, 95 A.L.R.2d 819, 821 § 3.

## VI

The defendant claims that the trial court committed error by excluding certain evidence as irrelevant. The name Dorothy Jones appeared on the reverse side of the forged check as an endorser. At the trial, the defendant tried to show, through a deputy sheriff, that there were four Dorothy Joneses listed in the New Haven city directory and that the sheriff had been unsuccessful in locating one of them. The defendant also attempted to introduce into evidence a page of the New Haven city directory to show that the state had made no effort to determine whether one of the four Dorothy Joneses had cashed the forged check. This evidence was excluded by the court because it was highly speculative, and its only purpose was to show that the police did not check out every Dorothy Jones listed in the city directory.

The trial court has a wide discretion in its rulings on the relevancy of evidence. *State* v. *Bassett,* 151 Conn. 547, 551, 200 A.2d 473. The trial court correctly excluded the page of the city directory and the sheriff's testimony relating to Dorothy Jones because they had very little probative value on the question whether the defendant had cashed the forged check. This evidence was of such slight and inconsequential relevance that it would serve more to divert attention from important evidence than to elucidate vital issues. *State* v. *Bassett,* supra.

## VII

The defendant claims error in the court's refusal to adopt her request to charge the jury. It is the defendant's claim that the court failed to explain properly to the jury the weight to be given to the

bank teller's in-court identification of the defendant and to caution the jury about the dangers of mistaken identification which inhered in the confrontation at the police station. We do not agree with this claim because the court adequately covered all of the points which the defendant claims were erroneously omitted from the charge.

The court told the jury that it was their duty to pass upon the credibility of the teller's identification of the defendant in the courtroom and to decide whether her identification in the courtroom had been influenced improperly by the identification at the police station or by anything which the police told her before she went to the police station. Moreover, the court told the jury that they had to determine whether the identification procedures used at the police station were reliable and whether they led to or suggested the identification of the defendant. The jury were instructed that they had to consider the confrontation at the police station in determining the credibility of the bank teller's in-court identification and whether the pretrial confrontation was the sole factor producing the in-court identification of the defendant.

It is clear that the jury were fully and adequately charged on the weight to be given to the bank teller's in-court identification of the defendant and that they were apprised of the possibility of mistaken identification owing to the single viewing of the defendant at the police station.

## VIII

Finally, the defendant claims that the trial court abused its legal discretion by refusing to grant all of the requests set forth in her pretrial motion for production and disclosure. In her motion for pro-

duction and disclosure, the defendant requested the court to order the state to produce for inspection and copying the forged check, copies of all statements taken from witnesses, and all checks drawn by Mrs. Endel on the First New Haven National Bank during the two months which preceded the alleged forgery. The court *(MacDonald, J.)* ordered the state to produce the forged check and five checks from Mrs. Endel's last bank statement.

During the oral argument of this appeal, counsel referred to § 706 of the 1967 Public Acts (now General Statutes [Rev. to 1968] § 54-86a), which provides for discovery in criminal cases.[1] This statute, however, was not in effect when the defendant made her pretrial motion for production and disclosure.

The finding is silent as to the facts and circum-

---

[1] "[Public Acts 1967, No. 706.] AN ACT CONCERNING CRIMINAL DISCOVERY.

"SECTION 1. Upon motion of a defendant at any time after the filing of the indictment or information, and upon a showing that the items sought may be material to the preparation of his defense and that the request is reasonable, the court shall order the attorney for the state to permit the defendant to inspect and copy or photograph any relevant (a) exculpatory information or material; (b) written or recorded statements, admissions or confessions made by the defendant; (c) books, papers, documents or tangible objects obtained from or belonging to the defendant or obtained from others by seizure or process; (d) copies of records of any physical or mental examinations of the defendant; (e) recorded testimony of the defendant before a grand jury; and (f) records of prior convictions of the defendant, or copies thereof, within the possession, custody or control of the state, the existence of which is known to the attorney for the state or to the defendant.

"SEC. 2. An order of the court granting relief under this act shall specify the time, place and manner of making the discovery and inspection permitted and may prescribe such terms and conditions as are just.

"SEC. 3. A motion under this act may be made only in a criminal case and shall include all relief sought under this act. A subsequent motion may be made only upon a showing of cause why such motion would be in the interest of justice."

stances which were before the court when it made its ruling on the defendant's motion for production and disclosure. There is nothing in the record to indicate that the court's ruling constituted an abuse of legal discretion.

It is unnecessary to discuss the defendant's remaining claims because of the view we have taken of this appeal.

There is no error.

In this opinion the other judges concurred.