STATE OF CONNECTICUT *v.* ROBERT GUTHRIDGE

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, JS.

146

Argued October 12—decided December 6, 1972

*James A. Wade,* special public defender, for the appellant (defendant).

*Richard A. Schatz,* assistant state's attorney, with whom, on the brief, was *John D. LaBelle,* state's attorney, for the appellee (state).

MacDonald, J. The defendant, Robert Guthridge, was found guilty by a jury of the crimes of robbery with violence in violation of § 53-14 of the General Statutes, binding with intent to commit a crime in violation of § 53-19 (two counts) and carrying a weapon without a permit in violation of §§ 29-35 and 29-37. He has appealed from the judgment rendered

on the verdict, assigning error to various portions of the court's charge, to several rulings made during the trial, and to the court's refusal to find certain facts claimed by the defendant to be material and to have been proved.

In considering first the errors claimed with respect to the finding, it would serve no purpose to discuss in detail the numerous requests set forth in the draft finding since, from our examination of the record, we have concluded that the court's finding contained a statement of the facts sufficient to enable us to test the charge and review the rulings on evidence. Practice Book § 635. "No corrections can be made to the finding which would benefit the defendant in presenting the questions of law which . . . [he] wishes to have reviewed by this court." *State* v. *Carnegie,* 158 Conn. 264, 266, 259 A.2d 628, cert. denied, 396 U.S. 992, 90 S. Ct. 488, 24 L. Ed. 2d 455. We have considered also the argument made in the defendant's brief that the court's inclusion in the finding of certain paragraphs in preference to those requested by him violates his right to the effective assistance of counsel. In specifically claiming that "[t]he court should include in its finding all facts which it finds proven which are claimed to be relevant and material to the questions of law raised," he cites as his authority *Cappiello* v. *Haselman,* 154 Conn. 490, 491, 227 A.2d 79, a case tried to the court and not, as here, to a jury. We would point out that under the provisions of Practice Book § 635, the court in a jury case does not find facts but "a statement of enough of the facts, relevant thereto, which each of the parties offered evidence to prove and claimed to have proved to make possible a review of the error claimed." "The wholesale attack on the finding tends to cloud the real issue and cast doubt

on the merits of the defendant['s] claims. . . . A litigant may not force into the claims of proof of his adversary factual matters which are objectionable to the latter and upon which he does not rely." *Franks* v. *Lockwood,* 146 Conn. 273, 275, 276, 150 A.2d 215. We find no merit to the defendant's attacks on the finding.

The state offered evidence to prove and claimed that it had proved the following facts: On April 19, 1970, at approximately 11 p.m., Louis Reid, Sr., hereinafter referred to as Reid, was in the kitchen of his home in Hartford, with his wife, Irene Reid, his sons Louis Reid, Jr., age 15, Donald Reid, age 12, and his nephew, Levi Compton, age 12. Reid sent Louis and Levi to take out the trash, and when they returned, a man armed with a shotgun and later identified as Sylvester Cooley entered the apartment with them and pointed the gun at Reid. Mrs. Reid, Louis, Jr., and Levi were still present in the kitchen but Donald at the time was in a bedroom. Two other men, one tall and the other short, also came into the kitchen and each carried a small gun. The apartment was well-illuminated and Reid recognized the three men, one of whom was the defendant, as individuals he had seen prior to the day of the robbery. Reid had seen the defendant in his store and on the street a total of approximately eight to ten times prior to April 19, 1970. When the defendant entered the apartment he approached Reid, who saw the defendant's face and also saw that he had a gun. The defendant tied and bound the occupants of the Reid apartment, and, as he was tying Reid, Reid again observed the defendant's face and also observed him as he bound the others. The defendant took Reid's wallet and Mrs. Reid saw the men remove money from it. Louis Reid, Jr., saw the

defendant point a gun at Reid when the "big guy" took the money. The defendant then went into the bedroom where Reid previously had hidden some $950 to $1000 and after about thirty minutes the three men left the apartment.

When Reid freed himself, he went into his bedroom and discovered that the approximately $950 to $1000 which had been hidden there was missing. When a policeman came to the apartment, Reid told him that he could recognize the robbers if he saw them again and that they had taken two rifles and about $900 to $1000. When the policeman arrived, the apartment "looked like it had been ransacked," and some members of the Reid family were still tied up. That same evening Reid went to police headquarters where Detective William Kearns, Jr., showed him eight photographs in sequence with the defendant's picture first, and Sylvester Cooley's picture second. From the photographs Reid was able to identify the defendant and Sylvester Cooley as two of the robbers. On the night of the robbery Mrs. Reid also went to police headquarters with Donald Reid, Louis, Jr., and Levi Compton, and they were shown some or all of the same photographs. Mrs. Reid identified Sylvester Cooley but did not identify the defendant; Louis Reid, Jr., and Donald Reid identified both Cooley and the defendant; Levi Compton could identify only Cooley. Reid, Mrs. Reid, Louis Reid, Jr., Donald Reid and Levi Compton were each alone when making these identifications. The police did not mention the defendant to the Reid family or to Levi Compton before they viewed the photographs, nor did the police allow them to see the names on the back of the photographs prior to making their separate identifications.

The defendant offered evidence to prove and claimed to have proved the following facts: On April 24, 1970, the defendant was arrested by members of the Hartford police department and was taken to police headquarters where he remained alone for about two hours in a small room. The police then told the defendant that they had someone outside and asked the defendant if he wanted that person to look at him. The defendant replied that he did not. A short time later the police brought Reid into the room and he identified the defendant as one of the men who had robbed him.

On October 6, 1970, the defendant was brought to trial and a preliminary hearing was held in the absence of the jury to determine the admissibility of certain evidence concerning his identification by witnesses. The witnesses were sequestered by agreement of the state and the defendant. At this hearing Reid, Mrs. Reid, Louis Reid, Jr., and Donald Reid were asked to identify the defendant, who was seated next to his counsel and was the only black person in the courtroom. Reid and Louis Reid, Jr., identified the defendant but Mrs. Reid could not and Donald testified that he was not sure of his identification. The next day in the presence of the jury the entire family identified the defendant and Donald Reid's testimony regarding the uncertainty of his identification of the previous day was read to the jury. Mrs. Reid testified that she did "recognize" the defendant in the courtroom the day before and she admitted that she had been unable to identify him from the photographs shown to her the night of the robbery.

I

The first assignment of error pressed by the defendant is that the court erred in charging the jury

as appears below.[1]  He claims that this charge was erroneous because it unfairly singled out his testimony for adverse comment, because it was inconsistent with the presumption of innocence and because it suggested that his testimony was entitled to less weight than that of any other witness.  We find no merit in this contention.  The rule is well settled in this state that the court may advise the jury that in weighing the credibility of an accused's testimony they can consider his interest in the outcome of the trial.  *State* v. *Palko,* 122 Conn. 529, 534, 191 A. 320, aff'd, 302 U.S. 319, 58 S. Ct. 149, 82 L. Ed. 288; *State* v. *Schleifer,* 102 Conn. 708, 725, 130 A. 184.  In addition, it is clear from the charge that the jury, far from being requested to place the accused in a special category, were instructed that he "stands before you just like any other witness and is entitled to the same considerations and must have his testimony measured in the same way as that of any other witness."  This portion of the charge was phrased so as not to place the defendant apart, and served to answer any question raised as to the treatment to be accorded his testimony.

The defendant also assigns error to the charge as

---

[1] "An accused person is not obliged to take the witness stand in his own behalf unless he wishes.  On the other hand he has a perfect right to take the witness stand in his own behalf as this accused has seen fit to do.  Whereas here an accused person does take the witness stand to testify in his own behalf you apply to his testimony the same standards by which testimony of any other witness is measured and tested.  You will consider the interest of the accused in the case as you would consider that of any other person who has testified and in that connection you will consider the importance to the accused of the outcome of this trial.  That is, an accused person having taken the witness stand stands before you just like any other witness and is entitled to the same considerations and must have his testimony measured in the same way as that of any other witness which would include your consideration of his obvious interest in the verdict which you are to render."

noted below[2] because it failed specifically to advise the jury that they could not infer the defendant's guilt of the crime charged simply because he had previously been convicted of felonies. He argues in his brief that to say simply that the felony convictions may be used "for no other purpose" than determining the accused's credibility "presupposes a high degree of sophistication on the part of the jurors that they will not reach an inference as to the defendant's guilt on the present charge." We reject this contention. The charge clearly precluded the jury from using the prior convictions for any purpose other than that of determining the defendant's credibility.

The defendant next claims that the court erred in failing to charge the jury with respect to an entire stipulation entered into between the state and the defendant.[3] The gist of this objection is that the court focused only on so much of the stipulation as admitted that the defendant had no permit for a gun. From a reading of the entire charge, however,

---

[2] "We have a statute which provides that no person shall be disqualified as a witness because of his conviction of a crime or crimes, but that such conviction may be shown for the purpose of affecting his credibility. You will recall that upon cross-examination the accused admitted that he had been convicted of several crimes. Therefore in passing upon the credibility of the accused's testimony you will consider that he has admitted being convicted of these crimes and give only such weight to the testimony as you think it deserves under the circumstances. The evidence adduced concerning the accused's felony convictions may be used by you, however, only on the question of determining his credibility on matters pertaining to his testimony and for no other purpose."

[3] "It was stipulated by and between the State of Connecticut and the defendant that on April 19, 1970, the defendant did not have a permit from any legitimate authority to carry a pistol although the defendant made it clear that he was not admitting the Fourth Count but simply that he was not requiring the State to prove he had no permit for a pistol."

it is apparent that the court referred to the stipulation for the limited purpose of establishing that only one element of the crime of carrying a weapon without a permit, namely, the lack of a permit, had been admitted. It is abundantly clear from the charge[4] that the weight to be accorded the testimony regarding carrying a weapon on the defendant's person without a permit was to be decided by the jury from evidence apart from the stipulation.

The next assignment of error is similar to the preceding one. The state and the defendant entered into a stipulation which provided that had Levi Compton been called as a witness it would develop that he was unable to pick out the defendant from photographs shown to him on the night of the robbery. The jury were fully apprised of this stipulation and were instructed to regard it as an established fact. The defendant assigns error in the failure of the trial court to charge the jury concerning Levi Compton's inability to identify the defendant when it commented on the credibility of witnesses. We find that the trial court did not err in this omission. The degree to which reference to the evidence may be necessary lies largely in the discretion of the court and we find no abuse of that discretion here. *Gorham* v. *Farmington Motor Inn, Inc.,* 159 Conn. 576, 583, 271 A.2d 94.

---

[4] "There are two essential elements which the State must prove before you may return a verdict of guilty upon this charge. One is that the accused did carry a pistol or revolver upon his person, and two, that the accused had no permit to do so. . . . You will recall that the parties during the course of the trial stipulated that no permit had been issued to the accused for any such gun. The State has produced evidence and claims to have proved not only all of the elements of each of the four offenses charged in the information but also that the accused was one of the participants in the robbery with violence and the binding with the intent to commit a robbery and further that he was carrying a pistol or revolver without a permit."

During the course of its instructions to the jury on the presumption of innocence the court used the phrase: "But the law is made for the protection of society and innocent persons and not to protect guilty ones." The defendant argues that this was erroneous because it "placed an unfair inference in the jury's mind that the law was not intended to protect the defendant in the instant case and that the jury had a duty to convict the defendant." The phrase to which the defendant assigns error is taken out of context. The charge must be considered as a whole and it is unfair to detach a portion of it from its context. *State* v. *LaFountain,* 140 Conn. 613, 621–22, 103 A.2d 138; *State* v. *Hayes,* 127 Conn. 543, 584, 18 A.2d 895. Taken in context it is abundantly clear that this phrase was intended only to insure that if the defendant were found guilty beyond a reasonable doubt of the crimes charged, it was the sworn duty of the jury to render a verdict as the evidence warranted.[5]

## II

Since the defendant, during argument, expressly waived any claim of a right-to-counsel violation during identification procedures, the thrust of his next two assignments of error is reduced to the claim that such identification procedures, both in-court and out-of-court, were so fundamentally unfair that evi-

---

[5] "It is the sworn duty of courts and jurors to safeguard the rights of persons charged with crime by proving guilt of an accused beyond a reasonable doubt before finding the accused guilty. But the law is made for the protection of society and innocent persons and not to protect guilty ones. If and when that presumption of innocence has been overcome and removed by proving beyond a reasonable doubt an accused person is guilty of a crime charged then it is the sworn duty of the jury to enforce the law which is made for the protection of life, society and property and to render such a verdict as the evidence warrants."

dence of such identifications should have been excluded. One-man confrontations do not per se constitute a denial of due process of law. *Simmons* v. *United States,* 390 U.S. 377, 88 S. Ct. 967, 19 L. Ed. 2d 1247; *Biggers* v. *Tennessee,* 390 U.S. 404, 88 S. Ct. 979, 19 L. Ed. 2d 1267, rehearing denied, 390 U.S. 1037, 88 S. Ct. 1401, 20 L. Ed. 2d 298 (conviction reaffirmed on second review December 7, 1972); *Stovall* v. *Denno,* 388 U.S. 293, 87 S. Ct. 1967, 18 L. Ed. 2d 1199; *State* v. *Carnegie,* 158 Conn. 264, 269, 259 A.2d 628, cert. denied, 396 U.S. 992, 90 S. Ct. 488, 24 L. Ed. 2d 455. "In order to determine whether a pretrial confrontation amounted to a violation of due process, it is necessary to consider the totality of the circumstances. *Foster* v. *California,* . . . [394 U.S. 440, 89 S. Ct. 1127, 22 L. Ed. 2d 402]; *Stovall* v. *Denno,* . . . [388 U.S. 293, 87 S. Ct. 1967, 18 L. Ed. 2d 1199]." *State* v. *Carnegie,* supra, 269. It is interesting to observe that in *Biggers* v. *Tennessee,* 390 U.S. 404, 408 (dis.), 88 S. Ct. 979, 19 L. Ed. 2d 1267, decided by an evenly divided court, Mr. Justice Douglas, in his dissenting opinion, states: "Of course due process is not always violated when the police fail to assemble a lineup but conduct a one-man showup." Here, on the defendant's objection to the proffered identification evidence, the court held a hearing on its admissibility in the absence of the jury and it was the court's determination that the one-man viewing was not unnecessarily suggestive or conducive to irreparable mistaken identification. It, therefore, allowed the jury to hear the testimony of Reid as to the one-man identification and specifically found that the police did not say to him when they requested his presence in the police station, "[c]ome on down, we got the man." Furthermore, the hearing clearly established

that Reid had an independent recollection of the accused apart from the one-on-one confrontation, and that other witnesses who had not seen the defendant in a one-man viewing clearly identified him. The state, therefore, satisfied its burden of showing by clear and convincing evidence that the in-court identification was independent of the one-man viewing. *State* v. *Oliver*, 160 Conn. 85, 90, 273 A.2d 867, cert. denied, 402 U.S. 946, 91 S. Ct. 1637, 29 L. Ed. 2d 115. It also is important to note that at the trial extensive cross-examination was allowed on all matters relating to the weight to be accorded to the in-court identification, and that the court charged the jury at length on the identification process and on the fact that they could disregard identification which was unnecessarily suggestive or conducive to irreparable mistake in identity. For the same reasons, we find that the court did not err in refusing the defendant's request that he be permitted to sit separate and apart from his counsel with other persons of similar size, age and race.

### III

The next assignment of error to which we turn is the defendant's claim that the trial court erred in refusing to permit him to inquire into alleged criminal involvements of Reid. During the preliminary voir dire examination Reid was asked by defense counsel about criminal matters he had pending at the time he made his identification of the defendant's photograph. Counsel claims that Reid insisted that a charge of receiving stolen goods was the only charge pending against him when he made his identification. He attempted to press his inquiry further in order to show that Reid had several other charges pending against him, but the court ruled that the

only evidence of this nature that it would allow for impeachment was evidence of prior felony convictions.

It is well established that impeachment of a witness on the basis of criminal conviction can be accomplished only by proof of felony convictions. General Statutes § 52-145; *Heating Acceptance Corporation* v. *Patterson,* 152 Conn. 467, 472, 208 A.2d 341. Although this rule does not prohibit legitimate cross-examination into specific acts of misconduct which indicate a lack of veracity, such acts cannot be shown by extrinsic evidence. *Martyn* v. *Donlin,* 151 Conn. 402, 408, 198 A.2d 700. The defendant offered no evidence of prior convictions, nor was he able to establish by means other than extrinsic evidence prior misconduct on the part of Reid. We, therefore, find that the court did not err in excluding the evidence of prior pending criminal matters. Furthermore, we are not convinced that the record reveals that Reid stated categorically that he had only one criminal matter pending against him at the time of his identification of the defendant. In the cross-examination the record indicates that, in response to the question, "Did you have cases pending in court?" Reid answered "Yes." The record further reveals that Reid was unsure of the exact number of cases pending against him but offered twice to bring the records to defense counsel during recess to settle the question. It was only after defense counsel pressed the matter that Reid answered that to the best of his knowledge he had "one or two."

We, therefore, find that the court did not err in excluding evidence of prior criminal charges pending against the witness Reid.

There is no error.

In this opinion the other judges concurred.