STATE OF CONNECTICUT *v.* HALVOR E. BLYDEN, JR.

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued October 11—decided December 4, 1973

*Melvin Scott,* special public defender, with whom, on the brief, was *Narcyz Dubicki,* for the appellant (defendant).

*C. Robert Satti,* assistant state's attorney, with whom, on the brief, was *Edmund W. O'Brien,* state's attorney, for the appellee (state).

HOUSE, C. J. The defendant, Halvor E. Blyden, Jr., was found guilty by a jury of the crime of escape from custody in violation of § 53-162 of the General Statutes. He appealed from the judgment rendered on the verdict, assigning error to a portion of the court's charge, the court's refusal to make various charges, and the court's refusal to allow the defendant to examine a state's witness about certain matters claimed by the defendant to be relevant to

his case. The assignments of error not argued in the brief are considered abandoned. *State* v. *Chisolm,* 165 Conn. 83, 328 A.2d 677; *State* v. *Ferraro,* 164 Conn. 103, 105, 318 A.2d 80; *State* v. *Keeler,* 164 Conn. 42, 43, 316 A.2d 782.

The state offered evidence to prove and claimed that it had proved the following facts: Between 11:30 p.m., August 14, 1970, and 7:30 a.m., August 15, 1970, Theodore Kovalik, a sergeant in the New London police force, was on duty in a patrol car with Officer Rinehart. Both officers were in uniform. When Kovalik had reported for work at the police station on August 14, 1970, a warrant was there for the arrest of the defendant, whom Kovalik knew, issued on charges of breaking and entering into a jewelry store and a pizzeria. Kovalik alerted the officers in his squad to be on the lookout for the defendant and left the warrant at the desk where any officer could obtain it.

At about 12:30 a.m., on August 15, 1970, Kovalik received information over the police radio that the defendant was at the Ebb Tide Restaurant in New London. Since Kovalik and Rinehart were in the vicinity, they proceeded to the Ebb Tide Restaurant and saw the man who had notified the police of the defendant's presence there. The man went into the restaurant and brought the defendant out, whereupon Kovalik told the defendant that he had a warrant for his arrest on a charge of breaking and entering, and that the warrant was at the police station.

There were conflicting claims whether the defendant was placed under arrest outside the Ebb Tide

Restaurant. Kovalik believed that he placed the defendant under arrest at that point. He warned him of his constitutional rights and would have restrained him had he tried to flee. The defendant in his claims of proof claims to have proved both that he was not placed under arrest at the restaurant but went to the police station voluntarily, and, inconsistently, that he was arrested and placed under restraint in front of the restaurant. Either by compulsion or of his own volition, the defendant did go with the officers to the police station. Upon their arrival there, Kovalik got the warrant, told the defendant for what charges it had been issued and read it to him while placing his hand on him. The desk officer spoke to the defendant and filled out an information form about him after which the defendant was booked in the arrest book or blotter by the desk officer.

When Kovalik told the defendant that he would have to go downstairs to the lockup until the bail commissioner was called, the defendant told Kovalik that he was not going to be locked up. Kovalik informed the defendant that he would have to be locked up until processed. As the officers started to take the defendant downstairs, he turned around, pushed an officer and fled out the front door. Kovalik and other officers pursued the defendant but he eluded them. An alert was sent to police cars to converge on the area.

At approximately 2 a.m., Kovalik and Rinehart were waiting in a parked police car in front of the home of the defendant's mother when a taxicab approached, slowed down, then accelerated. As the taxicab turned at the corner, the defendant jumped

out of it and ran into a wooded area where he was subsequently found lying on the ground and was apprehended.

As permitted by § 493 of the Practice Book, the information charged that the defendant "at Police Headquarters, did commit the crime of escape from custody in violation of Section 53-162[1] of the General Statutes." The defendant made no request for a bill of particulars as permitted by § 494 of the Practice Book but, as the defendant correctly notes in his brief: "The Court in its charge to the jury properly noted that the State's claim was not based upon that part of the statute relating to escape or attempt to escape from the custody of an officer while being transported to any correctional institution, or from such institution to any court or institution, but that the claim of the state was based on that part of the Statute which prohibits any person from escaping or attempting to escape at any time while in the legal custody of an officer outside the limits of any correctional institution."

Notwithstanding this admitted particularization of the portion of the statute which the state claimed had been violated by the defendant, the first assignment of error pressed by the defendant is that the court erred in refusing to charge the jury as to the statutory meaning of the words "penal institution" and "correctional institution." He claims that being

---

[1] "[General Statutes] Sec. 53-162. ESCAPE WHILE BEING TRANSPORTED TO OR FROM CORRECTIONAL INSTITUTION. Any person who escapes or attempts to escape from the custody of any sheriff, deputy sheriff, policeman, constable or other officer while being transported to any correctional institution or from such institution to any court or institution or escapes or attempts to escape at any time while in the legal custody of such officer outside the limits of any such institution shall be imprisoned for not more than ten years."

outside the limits of "such institution" is a material element of the offense charged, and, accordingly, an escaper must have some physical or legal contact with, or relationship to, one of the named facilities enumerated in the statutory definition of correctional institution to be found guilty of violating § 53-162. We find no merit to this contention.

The statute clearly proscribes conduct in two distinct situations, each of which is preceded by the operative words "escapes or attempts to escape." The use of the disjunctive particle "or" separating the two parts of the statute indicates a clear legislative intent of severability. *Bahre* v. *Hagbloom,* 162 Conn. 549, 557, 295 A.2d 547; *State* v. *Dennis,* 150 Conn. 245, 248, 188 A.2d 65; *State* v. *Sul,* 146 Conn. 78, 79, 147 A.2d 686; 2 Sutherland, Statutory Construction (3d Ed.) § 4923; 50 Am. Jur., Statutes, § 281.

The legislative evolution of § 53-162[2] corroborates the independent basis of criminality of the second portion of the statute. Its origin was Public Acts 1885, chapter 76, § 4, which prohibited escape from the custody of named law enforcement officers during transport to the county jail. The statute remained substantially unchanged until the 1953 session of the General Assembly enacted Public Act No. 322 which became § 2476c of the 1953 Cumulative Supplement to the General Statutes. It was again amended in 1961 by § 11 of Public Act No. 312,

---

[2] We note that when § 53-162 was later repealed by Public Act No. 828, § 214, of the 1969 session (effective October 1, 1971), which act revised the state's substantive criminal law, it was replaced by § 53a-171, which provides simply: "A person is guilty of escape from custody if he escapes from custody." Section 53a-168 (2) defines custody as "restraint by a public servant pursuant to an arrest or court order."

a statute which amended the several provisions regarding escape from various places of confinement to include them under one designation of penal or correctional institutions. See General Statutes § 1-1.

We cannot agree with the defendant's construction of § 53-162 that in order to prove a defendant guilty of escape from the custody of an officer the state was required to prove a nexus between a correctional institution and the escape from custody.

The defendant's second assignment of error is addressed to the portion of the court's charge to the jury in which the court charged that in weighing the testimony of the defendant the jury should apply the same principles by which the testimony of other witnesses is tested, taking into consideration the importance of the trial to the defendant and his motives, on that account, for not telling the truth. The court further charged: "An accused person having taken the witness stand stands before you just like any other witness and is entitled to the same consideration and must have his testimony measured in the same way as any other witness including, however, his interest in the verdict you are to render." Such a charge has long been approved by this court. See *State* v. *Fiske,* 63 Conn. 388, 392, 28 A. 572; *State* v. *Palko,* 122 Conn. 529, 534, 191 A. 320. Approval has most recently been reiterated in *State* v. *Moynahan,* 164 Conn. 560, 575, 325 A.2d 199, and *State* v. *Guthridge,* 164 Conn. 145, 151, 318 A.2d 87. The court was not in error in charging as it did.

The defendant next claims that the court erred in refusing to charge the jury that the common-law offense of escape is a lesser included offense in a violation of § 53-162, and since, at common law,

escape was not a "high crime or misdemeanor," the defendant's conviction of the lesser included offense would be punishable as a misdemeanor under § 54-117[3] of the General Statutes.

Escape was an offense by the common law of Connecticut. "The escape of a person lawfully arrested, by eluding the vigilance of his keepers, before he is put in hold or in prison, is an offense against public justice; and the party himself is punishable by fine and imprisonment. For however strong the natural desire of liberty may be, yet every man is bound to submit himself to the restraints of the law. 2 Sw. Dig. 325, 4 Bla. Com. 129." *State* v. *Doud,* 7 Conn. 384, 387.

Until October 1, 1971, the effective date of the new penal code, the criminal law of this state included both statutory and common-law offenses. General Statutes § 54-117, repealed by Public Acts 1969, No. 828 § 214; *State* v. *Schleifer,* 99 Conn. 432, 443, 121 A. 805; *State* v. *Danforth,* 3 Conn. 112; *State* v. *Salafia,* 29 Conn. Sup. 305, 284 A.2d 576. The defendant claims that § 53-162 incorporates the elements of the common-law crime of escape in all respects except the portion of § 53-162 which refers to a "correctional institution."

"The test for determining whether one violation is a lesser included offense in another violation is whether it is possible to commit the greater offense,

---

[3] "[General Statutes] Sec. 54-117. PENALTY FOR COMMON LAW HIGH CRIMES AND MISDEMEANORS. In case of conviction for any high crime or misdemeanor at common law . . . the offender may be imprisoned not more than fifteen years or be fined not more than five hundred dollars or both, and, in case of conviction for any other offense at common law, the offender may be imprisoned not more than one year or be fined not more than three hundred dollars or both."

in the manner described in the information or bill of particulars, without having first committed the lesser. If it is possible, then the lesser violation is not an included crime. See *United States* v. *McCue,* 160 F. Sup. 595, 599 (D. Conn.). In other words, to require an instruction on a lesser included offense, the lesser offense must not require any element which is not needed to commit the greater offense, in the manner alleged in the information or the bill of particulars." *State* v. *Brown,* 163 Conn. 52, 61–62, 301 A.2d 547; *State* v. *Cari,* 163 Conn. 174, 183, 303 A.2d 7; *State* v. *Monte,* 131 Conn. 134, 135, 38 A.2d 434.

The essential elements of the common-law crime of escape and the § 53-162 crime of escape from custody are identical: the legal custody of the escaper, the escape and the occurrence outside a facility of incarceration, or, as Blackstone stated it, before he is put in hold or in prison. 4 Blackstone, Commentaries 129. Section 53-162 "did not create a new statutory offense, but merely prescribed a new penalty for an existing common law offense . . . [it] did not alter the character of the offense, but . . . was in affirmation of the common law." *Rookey* v. *State,* 70 Conn. 104, 113, 38 A. 911. There is no additional element in the statutory prohibition, and the common-law offense is merely codified in § 53-162. The common-law crime of escape is not a lesser offense included in the crime proscribed by § 53-162 of the General Statutes.

Another assignment of error pressed by the defendant is a claim that the trial court erroneously sustained an objection by the state to the defendant's cross-examination of Kovalik with regard to the disposition of the charges for which the arrest

warrant had been issued. Kovalik had testified on cross-examination that the warrant for the defendant's arrest was for breaking and entering in connection with a named jewelry store. On redirect examination, Kovalik was shown an affidavit attached to the warrant which also implicated the defendant in a break into a named pizzeria. When the defendant on recross-examination inquired of Kovalik as to the disposition of the two charges, the state objected on the ground that whether the defendant was convicted or acquitted of the charges for which the arrest warrant was issued was irrelevant and immaterial in the trial on the charge of escape. The court sustained the objection and the defendant claims that the ruling was a prejudicial error.

The trial court has a wide discretion in its rulings on the relevancy of evidence. *State* v. *Carnegie,* 158 Conn. 264, 273, 259 A.2d 628; *State* v. *Bassett,* 151 Conn. 547, 551, 200 A.2d 473; *State* v. *Wade,* 96 Conn. 238, 248, 113 A. 458. The evidence sought was of such slight and inconsequential relevance that at best it would serve more to divert attention from important evidence than to elucidate vital issues. The ruling was not only well within a proper exercise of the court's discretion but it was a proper application of the generally accepted law in such cases. See 27 Am. Jur. 2d, Escape, Prison Breaking and Rescue, § 14, p. 857; note, 70 A.L.R.2d 1430, 1449-50.

One further issue on the appeal requires comment. As we have previously noted, the defendant's claims of proof as to whether he was placed under arrest outside the Ebb Tide Restaurant were inconsistent. In one paragraph he claimed: "Sergeant Kovalik intended to and did in fact place the defendant

under arrest outside the Ebb Tide." In another he claimed: "At no time was defendant placed under arrest at the Ebb Tide." The court charged the jury that in its opinion and as a matter of law there was insufficient evidence to indicate that the defendant was arrested outside the Ebb Tide Restaurant and that the jury could "disregard this testimony of any arrest at this time." The defendant excepted to the failure of the court to charge on the effect of an illegal detention in light of the instruction as to the incident outside the Ebb Tide Restaurant. The state filed an assignment of errors addressed to the court's instruction that as a matter of law there was insufficient evidence to indicate that the defendant was arrested outside the Ebb Tide Restaurant and the failure of the court to comply with its request to charge as to the effect of § 6-49 of the General Statutes concerning the authority of officers to arrest without a warrant " any person who such officer has reasonable grounds to believe has committed a felony."

These claims merit but little discussion. If the trial court erred in concluding that there was no arrest outside the Ebb Tide Restaurant that error clearly favored the defendant. But in our view the subsequent events at the police station render immaterial whether the defendant was arrested at the Ebb Tide Restaurant or later at the police station prior to his flight. At the police station the officers were clearly detaining the defendant in custody pursuant to an arrest warrant, the validity of which is not questioned. The circumstances were quite different from those in *State* v. *Leach,* 7 Conn. 452, upon which the defendant relies. The great weight of authority is that where police custody or imprisonment is under color of law the prisoner is not

entitled to liberate himself by escape but must obtain his release by lawful means even though he might be able to show such defects in the procedure by which he was arrested as would justify his release. 3 Wharton, Criminal Law and Procedure (Anderson Ed.) §§ 1373, 1374; Perkins, Criminal Law, p. 41; Clark & Marshall, Crimes (6th Ed.) § 14.07; 27 Am. Jur. 2d 854, Escape, Prison Breaking and Rescue, § 7; 30A C.J.S. 882–83, Escape, § 5; note, 70 A.L.R.2d 1430, 1452. As the court properly instructed the jury: "[I]f you find that Mr. Blyden was actually placed under arrest under a warrant lawfully issued, then, of course, you may conclude that the accused at that time was in the legal custody of the police."

The evidence printed in the appendices to the briefs amply supports a finding by the jury that the state proved the guilt of the defendant beyond a reasonable doubt and since in the defendant's appeal we find no error it is unnecessary further to discuss the merits of the state's assignment of error.

There is no error.

In this opinion the other judges concurred.