STATE OF CONNECTICUT *v.* MATTHEW MASELLI

COTTER, C. J., BOGDANSKI, PETERS, PARSKEY and D. SHEA, Js.

Argued May 13—decision released August 12, 1980

*Joetle K. Rubin,* assistant public defender, with whom were *John R. Williams* and, on the brief, *Jerrold H. Barnett,* public defender, for the appellant (defendant).

*Linda K. Lager,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *John J. Kelly,* assistant state's attorney, for the appellee (state).

DAVID M. SHEA, J. After a jury trial the defendant was found guilty of manslaughter in the first degree in violation of General Statutes § 53a-55 as a lesser offense included in the charge of murder in violation of General Statutes § 53a-54a (a). In this appeal the defendant claims error upon three grounds: (1) that the two kinds of manslaughter in the first degree submitted to the jury are not properly included in the charge of intentional murder set forth in the indictment; (2) that the charge to the jury referring to the defendant's interest in the outcome of the trial prejudiced the defendant and infringed upon his constitutional right to testify in his own behalf; and (3) that the charge upon the element of intent, which referred to the presumption that a person intends the natural consequences of his acts, violated the principles of *Sandstrom* v. *Montana,* 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979).

There is little dispute about the facts which the jury might reasonably have found, because most of the evidence concerning the bizarre circumstances of this homicide came from the testimony of the defendant.

In the early morning hours of December 10, 1975, the defendant shot and killed the driver of a taxicab which he had engaged to transport him from Stratford to visit a friend in Fairfield. The defendant was the only passenger in the cab and he fired eight bullets from a .32 caliber semi-automatic revolver at close range, six of which struck the victim in the head, face and neck. The taxicab, which had been traveling west on the Wilbur Cross Parkway in Woodbridge, hit a center guard rail and finally came

to rest against a tree on the side of the highway. Except for a small cut and a minor abrasion, the defendant was not injured in the crash.

The defendant claimed that he had shot the victim in self-defense as the cab was proceeding along the highway. He testified that after an evening of discussions with several associates in his business of promoting concerts and a quarrel with his girlfriend, he called a taxicab sometime after midnight in order to visit a friend who lived on route 59 near Fairfield. When the taxicab arrived, he sat in the front seat with the driver. Because commercial vehicles are not ordinarily permitted on the Merritt Parkway, the defendant said he was a policeman and, therefore, could use that highway.

As they proceeded east on the Merritt Parkway, the victim and the defendant engaged in a conversation. Assuming that the defendant was a policeman, the victim asked if he was armed. The defendant said he had a .32 caliber automatic. The victim said he had a .44 magnum in the cab.

After a half hour of driving easterly, the defendant noticed that they had been going in the wrong direction and had reached New Haven. The driver stopped at a phone booth and the defendant telephoned his friend and found that they should have gone westerly toward route 59 rather than easterly toward exit 59.

After the taxicab was turned around to proceed in the opposite direction the conversation resumed. The defendant testified that the driver appeared depressed but that his own mood was optimistic. The driver said something to the effect that there

was no hope for the world. The defendant remarked, "Only the devil talks like that." The driver responded, "I am the devil" and reached to his left side with his right hand to grasp what the defendant imagined was his .44 magnum. The defendant testified that when he saw the pistol in the driver's right hand pointing in his general direction, he drew his own gun, struck the driver's right hand which held the pistol and fired the entire clip of bullets in his own weapon at the victim.

An examination of the taxicab by the police at the scene disclosed a pellet air pistol capable of firing BB shot lying near the left foot of the victim. There was testimony that the victim kept such a gun in his taxicab.

## I

The claim of the defendant that the court erred in charging the jury upon the lesser included offense of manslaughter in the second degree was not the subject of any exception taken at the trial, as required by Practice Book, 1978, § 315. We must, nevertheless, consider the matter because the grounds relied upon, that the indictment did not inform the defendant of this charge and that the evidence was insufficient to warrant its submission, involve a claim of deprivation of a fundamental constitutional right and a fair trial.[1] *State* v. *Troynack,* 174 Conn. 89, 98, 384 A.2d 326 (1977); *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973).

---

[1] In the converse situation, where a defendant has failed to request an instruction upon a lesser included offense at the trial and claims error in its omission upon appeal, we have held that there is no fundamental constitutional right to a jury instruction on a lesser included offense. *State* v. *Whistnant,* 179 Conn. 576, 427 A.2d 414 (1980).

We have recently held that by virtue of General Statutes § 53a-45 (c)[2] a murder indictment is deemed to notify a defendant that upon the trial he may be found guilty of homicide in any lesser degree than that charged. *State* v. *Rodriguez,* 180 Conn. 382, 429 A.2d 919 (1980). It is well established that the statement of the principal charge in the indictment or information constitutes notice of any lesser included offense. Id., 402; see *Paterno* v. *Lyons,* 334 U.S. 314, 320–21, 68 S. Ct. 1044, 92 L. Ed. 1409 (1948).

In charging upon manslaughter in the first degree as a lesser offense included in the murder indictment, the trial court instructed the jury that the defendant would be guilty of that crime (1) if with intent to cause serious physical injury to the victim he caused his death, as provided in subsection (1) of General Statutes § 53a-55, or (2) if under circumstances evincing an extreme indifference to human life, he recklessly engaged in conduct which created a grave risk of death to the victim and thereby caused his death, as provided in subsection (a) (3).[3]

---

[2] General Statutes § 53a-45 (c) provides as follows: "The court or jury before which any person indicted for murder is tried may find him guilty of homicide in a lesser degree than that charged."

[3] The trial court did not instruct upon manslaughter in the first degree as delineated in subsection (a) (2) of General Statutes § 53a-55, i.e., "with intent to cause the death of another person, he causes the death of such person or a third person under circumstances which do not constitute murder because he acts under the influence of extreme emotional disturbance, as provided in subsection (a) of section 53a-54a, except that the fact that homicide was committed under the influence of extreme emotional disturbance constitutes a mitigating circumstance reducing murder to manslaughter in the first degree and need not be proved in any prosecution initiated under this subsection." It is not claimed that such an instruction would have been appropriate in this case.

Despite the defendant's complex argument to the contrary, we conclude that an intention to cause "serious physical injury" would be encompassed by the more culpable mental state of intending to inflict the ultimate damage of death upon a person. See General Statutes § 53a-3 (4); Webster, Third New International Dictionary. Furthermore, we have declared in the context of homicide "that an offense that would be a lesser included offense but for its requirement of a less culpable state of mind than that required for the greater, will be deemed a lesser included offense." *State* v. *Rodriguez,* supra, 408. Manslaughter in the first degree as defined in subsection (1) of § 53a-55 is a lesser included offense in a murder indictment.

The defendant's contention that manslaughter in the first degree based upon "reckless" conduct as set forth in subsection (a) (3) of § 53a-55 is not included in a charge of murder was explicitly rejected in *State* v. *Rodriguez,* supra, 408, where we overruled *State* v. *Troynack,* supra, and distinguished *State* v. *Ruiz,* 171 Conn. 264, 269–72, 368 A.2d 222 (1976), upon which the defendant has relied. In view of General Statutes § 53a-45 (c), which allows a defendant indicted for murder to be found guilty of homicide in a lesser degree than that charged, it is clear that any lesser degree of homicide may be considered by the trier, subject to the requirements of *State* v. *Whistnant,* 179 Conn. 576, 585, 427 A.2d 414 (1980), that the evidence does support a conviction of the lesser included offense and that the elements differentiating the lesser offense are sufficiently in dispute to justify finding the defendant innocent of the greater offense but guilty of the lesser. *State* v. *Rodriguez,* supra.

The defendant has made no claim in his brief that the evidence would not support a conviction of manslaughter in the first degree under both subsection (a) (1) and subsection (a) (3) of § 53a-55. During argument, however, the question did arise of the sufficiency of the evidence to support a finding that the defendant's avowedly intentional shooting of the victim constituted "reckless" conduct creating a grave risk of death to the victim under circumstances evincing an extreme indifference to human life, as proscribed by subsection (a) (3).

It appears that the defendant claimed neither insanity nor extreme emotional disturbance at the trial, but sought acquittal solely upon the ground of self-defense. The trial court instructed the jury upon the use of deadly physical force in defense of the person in accordance with General Statutes § 53a-19, charging that "[i]t is the facts as they reasonably appear to the defendant at the time he acted which measure the existence of the right of self-defense." The jury might well have concluded that for the defendant to have believed under the circumstances revealed by the evidence that the victim was about to use deadly force upon him so that it was necessary to fire eight shots at point blank range was such a gross deviation from the standard of conduct that a reasonable person would observe in the situation as to constitute recklessness. General Statutes § 53a-3 (13).

Since we have concluded that the court properly submitted to the jury manslaughter in the first degree in violation of both subsections (1) and (3) of § 53a-55, we are not concerned with the further question which the defendant raises of the failure of the verdict to specify which of these subsections

the jury relied upon. See *Yates* v. *United States,* 354 U.S. 298, 312, 77 S. Ct. 1064, 1073, 1 L. Ed. 2d 1356 (1957); *Leary* v. *United States,* 395 U.S. 6, 31–32, 89 S. Ct. 1532, 23 L. Ed. 2d 57 (1969); *Sandstrom* v. *Montana,* supra, 526. The jury might properly have relied upon either subsection in this case.

## II

The defendant also neglected to assert in the trial court his claim that the reference in the charge to his interest in the outcome of the trial denigrated his testimony and depreciated his constitutional right to testify. Practice Book, 1978, § 315. Despite the absence of the prescribed exception, the same issue has previously been regarded as falling within the principle of *State* v. *Evans,* supra, allowing review of newly raised claims of constitutional error. *State* v. *Mastropetre,* 175 Conn. 512, 525, 400 A.2d 276 (1978).

"The rule is well settled in this state that the court may advise the jury that in weighing the credibility of an accused's testimony they can consider his interest in the outcome of the trial." *State* v. *Guthridge,* 164 Conn. 145, 151, 318 A.2d 87 (1972), cert. denied, 410 U.S. 988, 93 S. Ct. 1519, 36 L. Ed. 2d 186 (1973). The charge in this case was substantially identical to that given in *State* v. *Guthridge,* supra, 151n. A majority of this court has continued to adhere to the rule. *State* v. *Mastropetre,* supra, 525; *State* v. *Bennett,* 172 Conn. 324, 335–37, 347 A.2d 247 (1977); *State* v. *Jonas,* 169 Conn. 566, 577, 363 A.2d 1378 (1975); *State* v. *Blyden,* 165 Conn. 522, 528, 338 A.2d 484 (1973); *State* v. *Moynahan,* 164 Conn. 560, 575, 325 A.2d 199 (1973). Nothing in the defendant's presentation has persuaded us to change our view.

## III

Once again we are obliged to consider a claim of error in the charge not brought to the attention of the trial court in accordance with Practice Book, 1978, § 315, upon the ground that a fundamental constitutional right of the defendant was violated by the instruction upon the element of intent. *State* v. *Arroyo,* 180 Conn. 171, 429 A.2d 457 (1980).

The trial court did include amidst several paragraphs of instructions upon intent the sentence: "Every person is presumed to intend the natural and necessary consequences of his acts." In *Sandstrom* v. *Montana,* 442 U.S. 510, 525, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979), a similar instruction, "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts," was held to be impermissible without adequate qualifying instructions to remove the possibility that a jury might interpret it as either (1) establishing a conclusive presumption that a person intends the results of his actions, or (2) as shifting the burden of proving that element of the crime from the state to the defendant.

We have reviewed the instructions[4] upon intent given in this case and find that they were adequately qualified to avoid the possible misinterpretations

---

[4] The pertinent portion of the charge upon intent was as follows:

"The third element which must be proved is that the person causing the death of the person must have done so with intent to cause the death; in other words, the state must prove beyond a reasonable doubt that the accused shot Keller with intent to cause his death.

"Now, 'intent' is a mental process. A person's intention may be inferred from his conduct. Every person is presumed to intend the natural and necessary consequences of his acts.

"It is often impossible, and never necessary to prove criminal intent by direct evidence. Ordinarily intent can be proved only by

found objectionable in *Sandstrom*. The sentence relating to the "presumption" was followed by a detailed exposition about inferring intent from circumstantial evidence. The charge upon this element of the crime was substantially similar to the charge upon that subject which was found to meet the requirements of *Sandstrom* in *State* v. *Arroyo*, 180 Conn. 171, 180–81, 429 A.2d 457 (1980). The discussion of intent was related to the principal offense of murder, the court concluding: "In this case, therefore, it will be a part of your duty to draw all reasonable inferences from the conduct of the accused in the light of the surrounding circumstances as to what purpose or intention was in

circumstantial evidence, as I have explained that term to you. What a person's purpose or intention has been is necessarily very largely a matter of inference.

"A person may take the stand and testify directly as to what his or her purpose or intention was, and that testimony you can believe or not according to whether or not it warrants belief. But no witness can be expected to come here and testify that he looked into another person's mind and therein saw a certain purpose or intention.

"The only way which a jury can determine what a person's purpose or intention was at any given time, aside from that person's own testimony, is by determining what the person's conduct was, and what the circumstances were surrounding that conduct; and from those infer what his purpose or intention was.

"A person acts intentionally with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct. To draw such an inference, which was mentioned heretofore in my charge, is not only the privilege but it is also the duty of the jury; provided of course the inference drawn is a reasonable one.

"In this case, therefore, it will be a part of your duty to draw all reasonable inferences from the conduct of the accused in the light of the surrounding circumstances as to what purpose or intention was in his mind at various times. In order for the accused to be found guilty of the charge of murder you must find beyond a reasonable doubt that he had an intent to cause the death of John Keller.

"If you do not find beyond a reasonable doubt that the accused had that intent then he is not guilty of murder."

his mind at various times. In order for the accused to be found guilty of the charge of murder you must find beyond a reasonable doubt that he had an intent to cause the death of John Keller. If you do not find beyond a reasonable doubt that the accused had that intent then he is not guilty of murder."

In explaining the requirement of an intention to cause serious physical injury as an element of manslaughter in the first degree in violation of sub-section (1) of § 53a-55,[5] the court did not repeat its statement of the presumption condemned by *Sandstrom,* a circumstance found to flaw the manslaughter verdict in *State* v. *Arroyo,* supra, 174. The previous instructions upon intent were referred to generally, but the court did say expressly that the state must have proved beyond a reasonable doubt that the defendant intended to cause serious physical injury to another person in order to obtain a conviction of that lesser included offense. We have no doubt but that the elaborate instructions

---

[5] This portion of the charge was as follows:

"And so far as this case is concerned a person is guilty of manslaughter in the first degree when, with intent to cause serious physical injury to another person he causes the death of the person . . . .

" 'Serious physical injury' means physical injury which creates a substantial risk of death.

"The court has already instructed you with reference to intent. That is an element involved in the first section of the statute relating to manslaughter in the first degree which states, 'A person is guilty of manslaughter in the first degree when, with intent to cause serious physical injury'—and I have explained 'serious physical injury' to you—'to another person, he causes the death of such person.'

"Now, in order for the accused to be found guilty of this charge, manslaughter in the first degree, the state must prove beyond a reasonable doubt, first, that the person intended to cause serious physical injury to another person and that he caused the death of such person. That relates to the first part of the statute that I referred to which involves 'intent.' "

upon intent given by the trial court sufficiently qualified the objectionable reference to the presumption as to remove the possibility of a misunderstanding on the part of the jury. We are reinforced in this conclusion by the fact that in this case where the defendant admitted that he intentionally fired eight bullets at the victim, causing his death, the verdict of the jury was for a conviction of the lesser offense of manslaughter in the first degree rather than murder, the sole differentiating element between the two crimes being the requisite mental state.

There is no error.

In this opinion COTTER, C. J., PETERS and PARSKEY, Js., concurred.

BOGDANSKI, J. (dissenting). I would find error in the trial court's charge concerning the defendant's testimony and credibility.

The defendant in this case testified on his own behalf. Thereafter the court charged the jury as follows: "You consider, as you will of any other witness the interest of the accused in the case, as you would consider that of any other person who has testified. In that connection *you'll consider the importance* to the accused *of the outcome* of this trial. In other words, what I'm trying to say is that an accused person, having taken the witness stand stands before you just like any other witness and is entitled to the same considerations and must have his testimony measured in the same way as that of any other witness, *which would include your consideration of his obvious interest in the verdict.*" (Emphasis added.)

A defendant is presumed innocent until proven guilty; *Deutch* v. *United States,* 367 U.S. 456, 471, 81 S. Ct. 1587, 6 L. Ed. 2d 963 (1961); *Coffin* v. *United States,* 156 U.S. 432, 452, 15 S. Ct. 394, 39 L. Ed. 432 (1895); and if he does not testify, no comment can be made upon his failure to do so. *Griffin* v. *California,* 380 U.S. 609, 614, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965). The charge in this case placed a penalty on the defendant's decision to testify by relegating his assertion of innocence to a less credible category of testimony than that of the state's witnesses. By creating such a circumstance, the charge under consideration substantially undermines the presumption that the accused is innocent by permitting the jury to attribute a motive to the defendant that can only attach if he is indeed guilty as charged.

"[T]he accused's right to a fair trial in a fair tribunal is the very foundation of due process. . . . 'Every procedure which would offer a possible temptation to the average man . . . to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the State and the accused, denies the latter due process of law.' *Tumey* v. *Ohio,* 273 U.S. 510, 532, 47 S. Ct. 437, 71 L. Ed. 749 [1927]; *Estes* v. *Texas,* 381 U.S. 532, 543, 85 S. Ct. 1628, 14 L. Ed. 2d 543 [1965]." *Aillon* v. *State,* 168 Conn. 541, 546–47, 363 A.2d 49 (1975). To single out the defendant for exercising his right to testify is equally as repugnant as commenting on the exercise of his right to remain silent.

The better rule is to limit the charge to a general statement of the elements by which all witnesses' testimony should be weighed and not to single out

the defendant's testimony as worth less than that of any other witness. See *State* v. *Bennett*, 172 Conn. 324, 338–40, 374 A.2d 247 (1977) (*Bogdanski, J.*, dissenting); *State* v. *Jonas*, 169 Conn. 566, 578–80, 363 A.2d 1378 (1975) (*Bogdanski, J.*, concurring and dissenting). See, e.g., *United States* v. *Brown*, 453 F.2d 101, 107 (8th Cir. 1971), cert. denied, 405 U.S. 978, 92 S. Ct. 1205, 31 L. Ed. 2d 253 (1972); *Garvin* v. *State*, 255 Ind. 215, 217–22, 263 N.E.2d 371 (1970); *State* v. *Bester*, 167 N.W.2d 705, 706–10 (Iowa 1969); *Hall* v. *State*, 250 Miss. 253, 265–67, 165 So. 2d 345 (1964); *State* v. *Finkelstein*, 269 Mo. 612, 618–22, 191 S.W. 1002 (1917); *Graves* v. *State*, 82 Nev. 137, 138–42, 413 P.2d 503 (1966); *Stewart* v. *State*, 484 S.W.2d 77, 79 (Tenn. Crim. App. 1972); and cases cited at 85 A.L.R. 577; see also *Bryson* v. *State*, 291 So. 2d 693 (Miss. 1974); *State* v. *Bruyere*, 110 R.I. 426, 293 A.2d 311 (1972).

I would therefore find error, set aside the judgment and order a new trial.