# State of Connecticut *v.* Walter Troynack

House, C. J., Cotter, Bogdanski, Longo and Speziale, Js.

Argued October 18—decision released December 20, 1977

*Robert S. Bello,* with whom were *Lawrence M. Lapine* and, on the brief, *P. Benedict Fraser,* for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Domenick J. Galluzzo,* assistant state's attorney, for the appellee (state).

Speziale, J.  Walter Troynak was charged with manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1).  A jury found him guilty of manslaughter in the second degree, General Statutes § 53a-56 (a) (1), and judgment was rendered on the verdict.  On appeal the defendant raises several claims of error, only two of which need be treated here:  violation of his right to a speedy trial; and the court's charge to the jury regarding the lesser included offenses of manslaughter in the second degree and negligent homicide.

The incident which gave rise to the charge against Troynack occurred in front of the Huddle Restaurant in Stamford on August 4, 1973.  The restaurant had just closed, and there were a number of people standing in the street.  Although the state and the defendant produced conflicting testimony as to what actually happened, it is undisputed that John Sheehan died of a wound inflicted by a knife held by Walter Troynack.

I

The defendant urges on appeal that the trial court (*Tedesco, J.*) erred in denying his motion to dismiss for the state's failure to grant him a speedy trial. The denial of a motion to dismiss is usually not assignable as error; however, because the defend-

ant's claim involves "a fundamental constitutional right," we will address it. *Klopfer* v. *North Carolina*, 386 U.S. 213, 223, 87 S. Ct. 988, 18 L. Ed. 2d 1 (1967); *State* v. *L'Heureux*, 166 Conn. 312, 315, 348 A.2d 578 (1974); see *State* v. *Evans*, 165 Conn. 61, 70, 327 A.2d 576 (1973). He bases his claim on the right to a speedy trial guaranteed by the sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution, and on his reading of General Statutes § 54-90 (c).[1]

The sixth amendment guarantee of a speedy trial is a fundamental right applicable to the states through the fourteenth amendment. *Klopfer* v. *North Carolina*, supra, 223. The Connecticut constitution, article first, § 8, provides a comparable safeguard for criminal defendants. Although the right to a speedy trial is fundamental, it is necessarily relative, since a requirement of unreasonable speed would have an adverse impact on both the accused and society. *United States* v. *Ewell*, 383 U.S. 116, 120, 86 S. Ct. 773, 15 L. Ed. 2d 627 (1966); *Beavers* v. *Haubert*, 198 U.S. 77, 87, 25 S. Ct. 573, 49 L. Ed. 950 (1905). In *Barker* v. *Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), the United States Supreme Court found "no constitutional basis for holding that the speedy trial right can be quantified into a specific number of days or months." Id., 523. Instead it adopted a "balancing

[1] Section 54-90 (c) provides, in pertinent part: "Whenever any charge in a criminal case has been continued in the superior court, or the circuit court or court of common pleas, and a period of thirteen months has elapsed since the granting of such continuance during which period there has been no prosecution or other disposition of the matter, the charge shall be construed to have been nolled as of the date of termination of such thirteen-month period and such erasure may thereafter be effected or a petition filed therefor, as the case may be, as provided in this subsection for nolled cases."

test," which would require that each case be approached on an ad hoc basis. The court identified four factors which should be assessed in determining whether a particular defendant has been denied this right: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Id., 530; *State* v. *L'Heureux,* supra, 319; see *Moore* v. *Arizona,* 414 U.S. 25, 94 S. Ct. 188, 38 L. Ed. 2d 183 (1973). Troynack's claim that he was denied his constitutional right to a speedy trial must be examined in light of these factors.

The chronology of events set forth in the court file is as follows:

| | |
|---|---|
| August 4, 1973 | Date of homicide. |
| August 30, 1973 | Bench warrant issued. |
| September 12, 1973 | Bench warrant returned and bond posted. |
| September 12, 1973 | Plea of not guilty. |
| September 26, 1973 | Motion for bill of particulars and discovery filed. |
| October 9, 1973 | Compliance with the defendant's motions. |
| March 11, 1975 | Motion to dismiss filed. |
| April 1, 1975 | Motion to dismiss denied. |
| April 1, 1975 | Trial commenced. |

As this record indicates, over eighteen months elapsed from the time of the arrest to the commencement of trial. This is unquestionably a substantial delay. The "reason for the delay" is because of the crowded criminal docket in Fairfield County and the state's conscious policy of according defendants who are incarcerated an earlier trial than those who have been able to post bond. There has been no claim by the defendant that the state

made a deliberate attempt to delay the trial. Although the government has the ultimate responsibility for according the accused a speedy trial, unintentional delays caused by overcrowded dockets may be weighed less heavily against the state than intentional delay. *Strunk* v. *United States,* 412 U.S. 434, 436, 93 S. Ct. 2260, 37 L. Ed. 2d 56 (1973); *Barker* v. *Wingo,* supra, 531; *State* v. *Brown,* 172 Conn. 531, 536, 375 A.2d 1024 (1977); *State* v. *L'Heureux,* supra, 319.

The "defendant's assertion of his right" by a motion to dismiss on speedy trial grounds was not filed until March 11, 1975,[2] almost eighteen months after his arrest. During this period the case was always placed on the monthly trial calendar, and every month the state's attorney's office would notify the defendant's counsel that the case would not be reached for trial. The defendant never objected to these delays, nor did he press for a speedy commencement of his trial. Although the failure to demand a speedy trial should not be construed as a waiver of that right, "the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right." *Barker* v. *Wingo,* supra, 528.

The final factor in the balancing test is "prejudice to the defendant." "Prejudice . . . should be assessed in the light of the interests of the defendants which the speedy trial right was designed to protect. . . . [The United States Supreme] Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize

---

[2] As previously noted in the opinion, the trial commenced on April 1, 1975, within three weeks of the defendant's "assertion of his right."

anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker* v. *Wingo, supra,* 532; *State* v. *L'Heureux, supra,* 320. In the present case, Troynack was free on bond awaiting trial and there is no claim that he suffered excessive anxiety and concern. The defendant asserts prejudice on the ground that a defense witness, one Wayne Hitchcock, had disappeared six weeks prior to the commencement of the trial. Defense counsel admitted at oral argument, however, that Hitchcock moved to Florida shortly after Troynack was arrested. Thus, it is unclear whether he would have been available as a witness even if Troynack had been tried almost immediately. Furthermore, at the hearing to dismiss, the defendant made no offer of proof as to what Hitchcock's testimony would have been. The defendant's brief describes Hitchcock as a "key witness" and refers the court to the transcript for evidence of the importance of his testimony. It is not evident from the cited portion of the transcript that Hitchcock's testimony was crucial or that it would have materially aided Troynack's case. There was even an indication that the state had considered calling Hitchcock as its own witness.

A review of the relevant factors indicates that, although there was a lengthy delay, there is no evidence of bad faith by the state. The defendant did not press for a speedy trial and has failed to show that he was appreciably prejudiced by the delay. On balance, we conclude that Troynack was not denied his right to a speedy trial.

The defendant has also claimed that General Statutes § 54-90 (c)[3] is applicable and requires dis-

---

[3] See footnote 1.

missal of the charge against him. The relevant language in that statute is that "[w]henever . . . a period of thirteen months has elapsed *since the granting of such continuance* during which period there has been no prosecution or other disposition of the matter, the charge shall be construed to have been nolled . . . ." (Emphasis added.) Troynack's case was not dormant for thirteen months or more. On the contrary, the defendant acknowledges that the case was consistently placed on the monthly trial calendar and then, after notice to the defendant, was put over when it could not be reached. The statute appears to be directed not to a situation such as this, but to circumstances in which the state obtains an initial continuance and then completely ignores the case for thirteen months.

Troynack's claim that the case should be dismissed because he was denied a speedy trial cannot be sustained on either constitutional or statutory grounds.

## II

We now consider the defendant's claim that the trial court erred in charging the jury that it could consider the crimes of manslaughter in the second degree (General Statutes § 53a-56 [a] [1]) and criminally negligent homicide (General Statutes § 53a-58) as lesser included offenses of the crime of manslaughter in the first degree (General Statutes § 53a-55 [a] [1]). Neither the defendant nor the state had requested such a charge, and the defendant's exception was overruled by the court. The jury returned a verdict of guilty of manslaughter in the second degree.

The bill of particulars filed by the state specified that the defendant was "charged in a one-count

Information with Manslaughter in the First Degree in violation of Section 53a-55 (a) (1) of the General Statutes." It further recited that "[t]he specific language of the statute which it is alleged that the defendant violated is as follows: A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person." In its charge, the trial court instructed the jury that if they did not find the defendant guilty of manslaughter in the first degree, they must then consider whether he was guilty of manslaughter in the second degree for "recklessly" causing the death of another person. The instruction continued that if the jury did not find the defendant guilty of manslaughter in the second degree they must then decide whether he had "with criminal negligence" caused the death of another person, in which case he would be guilty of criminally negligent homicide.

The accused in a criminal proceeding has a right to be informed of the nature and cause of the accusation. U.S. Const. Amend. VI; Conn. Const. Art. I § 8. The offense should be described with sufficient definiteness and particularity to apprise the accused of the nature of the charge so he can prepare to meet it at his trial. 2 Wharton, Criminal Procedure § 258 (12th Ed. 1975). The function of the bill of particulars under Connecticut practice is to enable the defendant to obtain a more precise statement of the offense charged in the information in order to prepare a defense. See *State* v. *Coleman,* 167 Conn. 260, 265, 355 A.2d 11 (1974); *State* v. *Sylvester Brown,* 163 Conn. 52, 61, 301 A.2d 547 (1972). Moreover, under the present rule in Connecticut, the court may look only to the information and bill

of particulars—as opposed to the evidence presented at trial—to determine what constitutes a lesser included offense of the offense charged. *State v. Irvin Brown,* 173 Conn. 254, 258, 377 A.2d 268 (1977); *State v. Blyden,* 165 Conn. 522, 529–30, 338 A.2d 484 (1973); *State v. Cari,* 163 Conn. 174, 183, 303 A.2d 7 (1972); *State v. Sylvester Brown,* supra, 61–62.

"The test for determining whether one violation is a lesser included offense in another violation is whether it is possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser. If it is possible, then the lesser violation is not an included crime. . . . In other words, to require an instruction on a lesser included offense, the lesser offense must not require any element which is not needed to commit the greater offense in the manner alleged in the information or the bill of particulars." *State v. Sylvester Brown,* supra, *State v. Irvin Brown,* supra; *State v. Ruiz,* 171 Conn. 264, 272, 368 A.2d 222 (1976); *State v. Blyden,* supra; *State v. Cari,* supra.

Manslaughter in the second degree requires recklessness; criminally negligent homicide requires criminal negligence. Neither recklessness nor criminal negligence are necessary elements of manslaughter in the first degree, General Statutes § 53a-55 (a) (1): causing death with *intent* to cause serious physical injury. It was possible to commit the greater offense, in the manner described in the bill of particulars, without having first committed either of the lesser offenses; therefore, the trial court erred in instructing the jury that man-

slaughter in the second degree and criminally negligent homicide should be considered as lesser included offenses of the offense charged.

The state acknowledges in its brief that manslaughter in the second degree and criminally negligent homicide "do not appear to be lesser included offenses of Section 53a-55 (a) (1) [manslaughter in the first degree] of the Penal Code." The state argues, however, that the exception to the charge was inadequate to alert the court to the true nature of the objection. The principal claim in the defendant's exception was that a defense had been prepared in light of the specification in the bill of particulars and had not been directed to the "lesser included offenses." Defense counsel did not state directly that the crimes charged were *not* included in the offense of manslaughter in the first degree, but he did make specific reference to *"Brown* and *Cari,"* "the cases in 163 Connecticut." The *Sylvester Brown* case ("in 163 Connecticut"), supra, was where we first stated that the reason for using the "evidence test" no longer existed because of greater liberality in matters of disclosure and discovery; and we adopted the present rule limiting lesser included offenses to those which are included within the offense charged in the information or bill of particulars. The exception was sufficiently specific to have put the court on notice. Even if the exception were not adequate, however, the circumstances of this case warrant a review of the claimed error, because "the record adequately supports a claim that a litigant has clearly been deprived of a fundamental constitutional right and a fair trial." *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973); *State* v. *Rice,* 172 Conn. 94, 101, 374 A.2d 128 (1976).

Troynack was found guilty of manslaughter in the second degree. Where a greater offense has been charged, conviction on a lesser offense is an acquittal on the greater. Although the conviction in this case was for a crime which was *not* a lesser included offense of the offense charged, the trial court instructed the jury that if they did not find Troynack guilty of manslaughter in the first degree, they must then consider whether he was guilty of manslaughter in the second degree. The verdict of guilty of manslaughter in the second degree was thus an implicit acquittal on the greater offense. The defendant, therefore, cannot be retried for the crime of manslaughter in the first degree. *Price* v. *Georgia,* 398 U.S. 323, 329, 90 S. Ct. 1757, 26 L. Ed. 2d 300 (1970); *State* v. *Kearney,* 164 Conn. 135, 138, 318 A.2d 100 (1972); see *Benton* v. *Maryland,* 395 U.S. 784, 795–96, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969). The conviction for manslaughter in the second degree, however, cannot stand because he was not charged with that crime, and because the court improperly instructed the jury that it had to be considered as a lesser included offense.

There is error, the judgment is set aside and the case is remanded with direction to render judgment that the defendant is not guilty of manslaughter in the first degree and ordering that the judgment of guilty of manslaughter in the second degree be vacated.

In this opinion the other judges concurred.