STATE OF CONNECTICUT *v.* SCOTT WINER
(AC 26554)

Bishop, Harper and Foti, Js.

Argued November 16, 2006—officially released February 13, 2007

*Deborah G. Stevenson*, special public defender, for the appellant (defendant).

*Lisa A. Riggione*, senior assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Christian M. Watson*, deputy assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Scott Winer, appeals from the judgment of conviction, rendered after a jury trial, of failing to comply with the registration requirements of General Statutes § 54-251 (a) pertaining to sex offenders.[1] On appeal, the defendant claims that, pursuant to

---

[1] Since 2000, General Statutes § 54-251 (a) has been amended for purposes not relevant to this appeal. For convenience, we refer to the current version of the statute. Section 54-251 (a) provides in relevant part: "Any person who has been convicted or found not guilty by reason of mental disease or defect of a criminal offense against a victim who is a minor or a nonviolent sexual offense, and is released into the community on or after October 1, 1998, shall, within three days following such release . . . and whether or not such person's place of residence is in this state, register such person's name, identifying factors, criminal history record and residence address with the Commissioner of Public Safety, on such forms and in such locations as the

General Statutes § 54-142a (c),[2] the charge should have been nolled automatically by operation of law more than sixteen months prior to the start of trial. We agree with the defendant, and, therefore, reverse the judgment of conviction and remand the matter with direction to dismiss the charge against the defendant.[3]

The following factual and procedural history is relevant to our discussion of the issues on appeal. On or about July 12, 2000, the defendant was arrested and charged in four separate cases, three for violation of probation in violation of General Statutes § 53a-32 and one for failure to comply with the requirements of § 54-251. In an amended information, the state alleged that the defendant failed to register his residential address with the commissioner of public safety on such forms and in such location as the commissioner shall direct in violation of § 54-251. On August 2, 2000, the defendant entered a plea of not guilty, with a jury election, to the charge of failure to register in violation of the requirements of § 54-251. On May 9, 2001, following a hearing on the combined violation of probation cases, the court found the defendant to be in violation of probation and sentenced him to six years incarceration. On June 13, 2001, the defendant's violation of probation cases appeared on a postjudgment docket together with this case, which previously had been placed on the firm jury trial list. During this appearance, the state indicated

commissioner shall direct, and shall maintain such registration for ten years except that any person who has one or more prior convictions of any such offense or who is convicted of a violation of subdivision (2) of subsection (a) of section 53a-70 shall maintain such registration for life. . . ."

[2] General Statutes § 54-142a (c) provides in relevant part: "Whenever any charge in a criminal case has been continued at the request of the prosecuting attorney, and a period of thirteen months has elapsed since the granting of such continuance during which period there has been no prosecution or other disposition of the matter, the charge shall be construed to have been nolled as of the date of termination of such thirteen-month period . . . ."

[3] Although the defendant makes other claims challenging his conviction, because his first claim is dispositive, we do not address his remaining claims.

to the court that this case was on the firm trial list and was "going to remain on the firm trial list." Subsequently, on October 29, 2004, while in court on another matter, the defendant inquired of the clerk the status of this case, and the clerk notified him that it was still pending. The defendant subsequently wrote a letter to the clerk of the court requesting that the court construe the case as nolled pursuant to § 54-142a (c). The clerk brought the letter to the attention of the state, and the case was placed on the docket for December 14, 2004. On December 14, 2004, the state requested that the court place the case on the active case list for trial on January 11, 2005. On December 17, 2004, the defendant filed a motion to construe a nolle and to dismiss with prejudice along with a motion to dismiss for lack of a speedy trial. On January 11, 2005, the defendant filed a corrected motion to construe a nolle and to dismiss with prejudice.

In considering the defendant's motion to construe a nolle, the court, sua sponte, sought testimony from the clerk's office as to when the last time a trial was held in the district and how many judges were available to try cases during the period of time that the defendant's case was pending. The clerk testified that during the time period when the defendant's case was pending, many cases were called for trial by the state but not the defendant's case. The defendant testified that he thought that the case had been nolled earlier. The court dismissed the defendant's testimony as not credible, commenting, in sum, that the defendant is an experienced person and knows that cases do not disappear. The court found that § 54-142a (c) was "directed at prohibiting [the state] from attempting to get a defendant to serve time short of a conviction by simply placing a case on a jury docket and allowing it to stay dormant for the same amount of time . . . the person would get if the person had been convicted. It's to

prohibit and prevent misconduct on the part of the [state], which is why it incorporates the statement [regarding] when the case has been on the firm jury docket for thirteen months at the request—and the [state] has requested a continuance." The court found that the length of the delay was not due to the misconduct or bad motive of the state. The court further found that because the defendant did not accept the state's plea bargain offer regarding this charge and sought a trial, the case had been continued at his request. The court also intimated that the delay had been a strategy on the part of the defendant to enable him to make this claim. The court concluded that because the case had not been continued at the request of the state, § 54-142a (c) did not apply.[4] The court denied the defendant's motions on January 13, 2005.

Following a four day trial, the jury found the defendant guilty. The court subsequently denied the defendant's motion for a new trial, motion for judgment of acquittal and motion for arrest of judgment, and sentenced the defendant to three years incarceration, execution suspended, and three years probation to run concurrently with the sentence he was then serving. This appeal followed.

The issue on appeal is whether the court properly concluded that § 54-142a (c) does not apply to the defendant's case and, more specifically, whether the court's finding that the defendant, not the state, had requested that the matter be continued is clearly erroneous. Such a determination, however, inherently depends on the proper interpretation of the statute and requires a legal conclusion as to the circumstances in which the legislature considers a case to be continued at the request of

---

[4] The court noted: "And it just seems impractical to me that that would mean then, necessarily, that any case that wasn't called in thirteen months is by statute automatically nolled or dismissed. It will make a mockery out of the court system if that statute were followed literally."

the state. Therefore, because the issue is ultimately one of statutory interpretation, our review is plenary. *State v. McDevitt*, 94 Conn. App. 356, 359, 892 A.2d 338 (2006).

"Relevant legislation and precedent guide the process of statutory interpretation. [General Statutes § 1-2z] provides that, [t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the statute shall not be considered. . . . [P]ursuant to § 1-2z, [the court is] to go through the following initial steps: first, consider the language of the statute at issue, including its relationship to other statutes, as applied to the facts of the case; second, if after the completion of step one, [the court] conclude[s] that, as so applied, there is but one likely or plausible meaning of the statutory language, [the court] stop[s] there; but third, if after the completion of step one, [the court] conclude[s] that, as applied to the facts of the case, there is more than one likely or plausible meaning of the statute, [the court] may consult other sources, beyond the statutory language, to ascertain the meaning of the statute.

"It is useful to remind ourselves of what, in this context, we mean when we say that a statutory text has a plain meaning, or, what is the same, a plain and unambiguous meaning. [Our Supreme Court] has already defined that phrase. By that phrase we mean the meaning that is so strongly indicated or suggested by the language as applied to facts of the case, without consideration, however, of its purpose or the other, extratextual sources of meaning . . . that, when the language is read as so applied, it appears to be the meaning and appears to preclude any other likely meaning. . . . Put

another way, if the text of the statute at issue, considering its relationship to other statutes, would permit more than one likely or plausible meaning, its meaning cannot be said to be plain and unambiguous." (Internal quotation marks omitted.) *State* v. *Prazeres*, 97 Conn. App. 591, 594–95, 905 A.2d 719 (2006).

With those principles in mind, we turn to the case at hand. We first look to the record to determine whether the court correctly concluded that the defendant's case was not continued at the request of the state. On June 13, 2001, as noted, the state indicated that the case was "going to remain on the firm trial list." Although this statement effectively postponed the defendant's case and continued it to an indefinite time in the future, because the state did not explicitly request a continuance, it is not clear whether this is a continuance at the request of the state as contemplated in § 54-142a (c). Because the phrase "continued at the request of the state" may be interpreted in many different ways, particularly as applied to the facts of this case, and the intended meaning of the phrase is not clear from the language of the statute, we look to extratextual sources for guidance.

Webster's Third New International Dictionary defines the word "continue" as "to carry onward or extend" or "to keep on the court calendar: subject to further consideration; postpone by a continuance." It defines the term "continuance" as "a holding on or remaining in a particular state or course of action" or "the adjournment of the court proceedings in a case to a future day." Black's Law Dictionary (7th Ed. 1999) also defines a "continuance" as "[t]he adjournment or postponement of a trial or other proceeding to a future date." These definitions suggest that the state's actions on June 13, 2001, amounted to a continuance of the defendant's case.

We next turn to the legislative history of § 54-142a (c). In 1981, the language "at the request of the prosecuting attorney" was added to the statute.[5] There is scant reference to the purpose for this change in the legislative history.[6] Thus, we look to the intent of the statute as a whole. The sixth amendment to the United States constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." This guarantee of a speedy trial is a fundamental right applicable to the states through the fourteenth amendment to the United States constitution. *Klopfer* v. *North Carolina*, 386 U.S. 213, 222, 87 S. Ct. 988, 18 L. Ed. 2d 1 (1967). The thirteen month provision was also inspired by the *Klopfer* decision. In fashioning the statute at hand, the legislature noted: "[T]he Supreme court in the case of [*Klopfer*] v. *North Carolina* has laid down a doctrine which is mandated and states . . . that if there has been no prosecution of the case . . . or disposition of the case for a thirteen month period, if it has simply been continued and continued and continued, that case must constitutionally be dismissed." 17 H.R. Proc., Pt. 2, 1974 Sess., p. 737, remarks of Representative Samuel S. Freedman. Our Supreme Court has held that the legislature "specifically designed § 54-142a (c) in order to avoid the speedy trial violations that the legislature feared otherwise might occur." *Cislo* v. *Shelton*, 240 Conn. 590, 599, 692

---

[5] Prior to 1981, the statute provided in relevant part: "Whenever any charge in a criminal case has been continued in the superior court . . . ."

[6] In the hearing before the Judiciary Committee, Representative Richard D. Tulisano inquired: "At the present time whenever any charge of criminal cases to be continued for a period of [thirteen] months has elapsed since the granting of the—and no prosecution, then there is a noll[e] entered. Now you have the language of the prosecuting attorney. Does that mean that any one request for a continuance from the defense would end up as a holding of this whole matter which may go on for two years or three?" Conn. Joint Standing Committee Hearings, Judiciary, Pt. 3, 1981 Sess., p. 917.

Judge Maurice Sponzo, then chief court administrator, replied: "I don't think that was the intent and it would trouble us if that was deleted." Id.

A.2d 1255 (1997). These concerns have been mirrored
by the judges of the Superior Court as demonstrated
by the time limitations for trials set forth in the rules
of practice. Practice Book § 43-39 sets forth the general
rule and provides in relevant part: "(a) Except as other-
wise provided herein and in [§] 43-40, the trial of a
defendant charged with a criminal offense . . . (c)
. . . shall commence within twelve months from the
filing of the information or from the date of the arrest,
whichever is later." Practice Book § 43-40 then sets
forth ten circumstances constituting those "periods of
time [that] shall be excluded in computing the [twelve
months] within which the trial of a defendant . . .
must commence pursuant to [§] 43-39 . . . ." The first
nine delineate specific circumstances; the tenth pro-
vides more generally for "[o]ther periods of delay occa-
sioned by exceptional circumstances."[7] Practice Book
§ 43-40 (10).

---

[7] Practice Book § 43-40 provides: "The following periods of time shall be
excluded in computing the time within which the trial of a defendant charged
by information with a criminal offense must commence pursuant to Section
43-39:

"(1) Any period of delay resulting from other proceedings concerning the
defendant, including but not limited to:

"(A) delay resulting from any proceeding, including any examinations, to
determine the mental competency or physical capacity of the defendant;

"(B) delay resulting from trial with respect to other charges against the
defendant;

"(C) delay resulting from any interlocutory appeal;

"(D) the time between the commencement of the hearing on any pretrial
motion and the issuance of a ruling on such motion;

"(E) delay reasonably attributable to any period, not to exceed thirty
days, during which any proceeding concerning the defendant is actually
under advisement by the judicial authority;

"(F) delay resulting from any proceeding under General Statutes §§ 17a-
685, 54-56e, 54-56g, 54-56m or any other pretrial diversion program author-
ized by statute.

"(2) Any period of delay resulting from the absence or unavailability of
the defendant, counsel for the defendant, or any essential witness for the
prosecution or defense. For purposes of this subdivision, a defendant or
any essential witness shall be considered absent when such person's where-
abouts are unknown and cannot be determined by due diligence. For pur-
poses of this subdivision, a defendant or any essential witness shall be
considered unavailable whenever such person's whereabouts are known

In *State* v. *McCarthy*, 179 Conn. 1, 11, 425 A.2d 924 (1979), the defendant sought a nolle pursuant to General Statutes § 54-90 (c) (now § 54-142a [c]). Our Supreme Court concluded that the trial court properly denied the defendant's request on the ground that the defendant's case had not been dormant for thirteen months or more. *State* v. *McCarthy*, supra, 12. The Supreme Court concluded that the case was being actively prosecuted during that time period and noted that several motions were filed and argued during that time period, including motions to dismiss, bills of particulars, motions for

but his or her presence for trial cannot be obtained by due diligence or he or she resists appearing at or being returned for trial.

"(3) Any period of delay resulting from the fact that the defendant is mentally incompetent or physically unable to stand trial.

"(4) A reasonable period of delay when the defendant has been joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted.

"(5) Any period of time between the date on which a defendant or counsel for the defendant and the prosecuting authority agree that the defendant will plead guilty or nolo contendere to the charge and the date the judicial authority accepts or rejects the plea agreement.

"(6) Any period of time between the date on which the defendant enters a plea of guilty or nolo contendere and the date an order of the judicial authority permitting the withdrawal of the plea becomes final.

"(7) The period of delay resulting from a continuance granted by the judicial authority at the personal request of the defendant.

"(8) The period of delay resulting from a continuance granted by the judicial authority at the request of the prosecuting authority, if:

"(A) the continuance is granted because of the unavailability of evidence material to the state's case, when the prosecuting authority has exercised due diligence to obtain such evidence and there are reasonable grounds to believe that such evidence will be available at a later date; or

"(B) the continuance is granted to allow the prosecuting authority additional time to prepare the state's case and additional time is justified because of the exceptional circumstances of the case.

"(9) With respect to a defendant incarcerated in another jurisdiction, the period of time until the defendant's presence for trial has been obtained, provided the prosecuting authority has exercised reasonable diligence (A) in seeking to obtain the defendant's presence for trial upon receipt of a demand from the defendant for trial, and (B) if the defendant has not theretofore demanded trial, in filing a detainer with the official having custody of the defendant requesting that official to advise the defendant of the defendant's right to demand trial.

"(10) Other periods of delay occasioned by exceptional circumstances."

disclosure, a motion to quash, a bond review, motions addressed to the grand jury and a motion for a speedy trial. Id. In *State* v. *Milum*, 197 Conn. 602, 500 A.2d 555 (1985), our Supreme Court similarly upheld the trial court's denial of the defendant's request for a nolle because it had not been dormant for thirteen months, noting that the defendant's case was subject to trial several times during that time period. Id., 604 n.2. Both *McCarthy* and *Milum* cited *State* v. *Troynack*, 174 Conn. 89, 384 A.2d 326 (1977), for the following proposition: "The statute appears to be directed not to a situation such as this, but to circumstances in which the state obtains an initial continuance and then completely ignores the case for thirteen months." (Internal quotation marks omitted.) *State* v. *McCarthy*, supra, 12; *State* v. *Milum*, supra, 604 n.2. In *Troynack*, our Supreme Court found that the defendant's case was consistently placed on the monthly calendar and then, after notice to the defendant, was put over when it could not be reached. The court, therefore, concluded that the defendant's case was not dormant. *State* v. *Troynack*, supra, 95.

This case is readily distinguishable from those previously cited. Here, on June 13, 2001, as noted, the state indicated to the court that the defendant's case was "going to remain on the firm trial list." Although neither party explicitly requested a continuance, in indicating that the case was going to remain on the firm trial list, the state effectively informed the court that it was not going to be tried on that day. Such a statement may be construed as a continuance by the state in its routine responsibility for prosecuting cases on the docket. In sum, given the common meaning of the term "continuance," it is clear that by postponing the trial of the defendant's case and advancing it on the trial list to no certain date, the case was continued at the request of the state. Following the state's request on June 13, 2001,

that the defendant's case remain on the firm trial list, the state completely abandoned the prosecution of the defendant's case until December, 2004. Unlike the situations in *McCarthy*, *Milum* and *Troynack*, the defendant's case was not called for trial, nor were there any motions filed or argued for a period of more than three years. The defendant testified that he was not even aware that his case was still pending. Although the court found that the defendant's testimony was not credible, the burden to prosecute the case is not on the defendant.

The court further intimated that the delay may have been a strategic move employed by the defendant to take advantage of § 54-142a (c). There is no evidence in the record to support the suggestion that the defendant allowed his case to be ignored because he intended to seek a nolle after the expiration of the thirteen month period. Even if the defendant had wanted to stall his case for the purpose of invoking § 54-142a (c), it is undeniable that the state retains the responsibility to advance the prosecution of a case. Reading § 54-142a (c) together with Practice Book §§ 43-39 and 43-40, it is reasonable to infer that the legislature added the language "at the request of the prosecuting attorney" to the statute not solely for the purpose of preventing misconduct or bad faith on the part of the state, as stated by the court, but also to make it clear that a defendant should not be permitted to stall the proceedings and then seek dismissal. Although we agree that the record is devoid of any evidence of misconduct or bad faith on the part of the state, the record equally lacks any indication that the defendant intentionally delayed the prosecution of his case. It is undisputed here that the defendant's case was completely dormant from June 13, 2001, until December, 2004. We conclude that this is the very situation that § 54-142a (c) was intended to address.

The judgment is reversed and the case is remanded with direction to dismiss the charge against the defendant.

In this opinion the other judges concurred.