## STATE OF CONNECTICUT *v.* SCOTT WINER
### (SC 17889)

Norcott, Katz, Vertefeuille, Zarella and Schaller, Js.

Argued February 14—officially released April 29, 2008

*Lisa A. Riggione*, senior assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Christian Watson*, assistant state's attorney, for the appellant (state).

*Deborah G. Stevenson*, special public defender, for the appellee (defendant).

*Opinion*

KATZ, J. The defendant, Scott Winer, appealed from the judgment of conviction, rendered after a jury trial, of failure to comply with sex offender registration requirements in violation of General Statutes (Rev. to 1999) § 54-251 (a), as amended by Public Acts 1999, No. 99-183, § 2,[1] claiming, inter alia, that, pursuant to

---

[1] General Statutes (Rev. to 1999) § 54-251 (a), as amended by Public Acts 1999, No. 99-183, § 2, provides in relevant part: "Any person who has been convicted or found not guilty by reason of mental disease or defect of a criminal offense against a victim who is a minor or a nonviolent sexual offense, and is released into the community on or after October 1, 1998, shall, within three days following such release and whether or not such person's place of residence is in this state, register such person's name, identifying factors, criminal history record and residence address with the

General Statutes § 54-142a (c),[2] the charge was nolled automatically by operation of law more than sixteen months prior to the start of trial because the state's conduct had resulted in a continuance of the case beyond the period permitted under § 54-142a (c), and, therefore, that the case should have been dismissed. The Appellate Court agreed with the defendant, and, accordingly, reversed the judgment of conviction and remanded the matter to the trial court with direction to dismiss the charge against the defendant. *State* v. *Winer*, 99 Conn. App. 579, 915 A.2d 883 (2007). Thereafter, we granted the state's petition for certification to appeal from the Appellate Court's judgment, limited to the following issue: "Whether the Appellate Court properly determined that the defendant was entitled to

Commissioner of Public Safety, on such forms and in such locations as the commissioner shall direct, and shall maintain such registration for ten years except that any person who has one or more prior convictions of any such offense or who is convicted of a violation of subdivision (2) of subsection (a) of section 53a-70 shall maintain such registration for life. . . ."

[2] General Statutes § 54-142a (c) provides: "Whenever any charge in a criminal case has been nolled in the Superior Court, or in the Court of Common Pleas, if at least thirteen months have elapsed since such nolle, all police and court records and records of the state's or prosecuting attorney or the prosecuting grand juror pertaining to such charge shall be erased. However, in cases of nolles entered in the Superior Court, Court of Common Pleas, Circuit Court, municipal court or by a justice of the peace prior to April 1, 1972, such records shall be deemed erased by operation of law and the clerk or the person charged with the retention and control of such records shall not disclose to anyone their existence or any information pertaining to any charge so erased, provided nothing in this subsection shall prohibit the arrested person or any one of his heirs from filing a petition to the court or to the records center of the Judicial Department, as the case may be, to have such records erased, in which case such records shall be erased. *Whenever any charge in a criminal case has been continued at the request of the prosecuting attorney, and a period of thirteen months has elapsed since the granting of such continuance during which period there has been no prosecution or other disposition of the matter, the charge shall be construed to have been nolled as of the date of termination of such thirteen-month period* and such erasure may thereafter be effected or a petition filed therefor, as the case may be, as provided in this subsection for nolled cases." (Emphasis added.)

a dismissal based upon its construction of . . . § 54-142a (c) and its review of the record in this case." *State* v. *Winer*, 282 Conn. 905, 920 A.2d 311 (2007). We conclude that the Appellate Court's determination was improper, and we reverse the judgment.

The record sets forth the following undisputed factual and procedural history relevant to the issues on appeal. In 1998, the defendant entered nolo contendere pleas to three charges of risk of injury to a child involving sexual misconduct. On or about March 24, 2000, after having served a six year term of imprisonment, the defendant was released into the community on probation with special conditions for a period of five years. On July 12, 2000, the defendant was arrested and charged in four separate cases, three for violation of probation in violation of General Statutes § 53a-32 and one for failure to comply with the sex offender registration requirements of § 54-251 (a), specifically, failure to register his residential address with the commissioner of public safety. On August 2, 2000, the defendant entered a plea of not guilty and elected a jury trial on the charge of failure to register. On February 28, 2001, the defendant appeared in court on all four matters and requested a continuance because he was awaiting a decision on a pending appeal of the risk of injury convictions that had led to his having been placed on probation and the condition that he register as a sex offender.[3] The case was continued to April 6, 2001. On May 9, 2001, following a hearing on the three violation of probation cases, the court found the defendant to be in violation of probation and sentenced him to six years incarceration.

---

[3] On May 14, 2002, the Appellate Court issued its opinion rejecting the defendant's appeal of the risk of injury convictions in so far as it challenged the trial court's denial of his motion to withdraw the guilty pleas, but reversing the judgment in part insofar as the trial court had failed to impose the statutory minimum period of probation and remanding the case for resentencing. *State* v. *Winer*, 69 Conn. App. 738, 753, 756, 796 A.2d 491, cert. denied, 261 Conn. 909, 806 A.2d 50 (2002).

Court records indicate that on that date, the matter of the failure to comply with the sex offender registration requirements—the basis for the present case—was placed on the firm jury trial list, without further explanation.

Thereafter, on June 13, 2001, the defendant's violation of probation cases appeared on a postjudgment docket together with the present case, which was marked for pretrial conference on that date, despite previously having been placed on the firm jury trial list. During this court appearance, Louis Avitabile, the special public defender who had represented the defendant in connection with the violation of probation cases and the related appeal, was appointed by the court to represent the defendant on the charge in the present case.[4] After the pretrial conference held that day failed to result in a plea agreement, the state informed the court that "th[is] case is going to remain on the firm trial list."

Three years later, on October 29, 2004, while he was in court on another matter, the defendant inquired about the status of the present case with the clerk of the court and was told that it still was pending. Thereafter, the defendant wrote a letter to the clerk of the court stating that the case had been continued at the state's request and that, because there had been no prosecution for thirteen months, the court should construe the case as having been nolled pursuant to § 54-142a (c). After the clerk brought the letter to the attention of the state, the case was placed on the docket for December 14, 2004, and on that date, the state requested that the court place the case on the active case list for trial on January 11, 2005. The defendant thereafter filed two motions, which were ultimately consolidated in his

---

[4] Court records indicate that, although Avitabile previously had filed an appearance in this case, that appearance had been marked "for the purpose of the bail hearing only . . . ."

January 11, 2005 pleading captioned, "Corrected Motion To Construe A Nolle And To Dismiss With Prejudice": one motion to construe the charge as having been nolled and to dismiss with prejudice pursuant to § 54-142a (c), and another motion to dismiss the charge for lack of a speedy trial pursuant to General Statutes § 54-56.[5] Prior to that time, the defendant had not filed a motion for a speedy trial or otherwise requested that the case be heard.

At a hearing on both of the defendant's motions, the trial court, sua sponte, elicited testimony from Laura Leigh of the Superior Court clerk's office in geographical area number seventeen in Bristol as to the following: there were two judges assigned to the geographic area where the case had been pending during 2003–2004; ten trials had been conducted during that time, five of which were jury trials; the defendant's case had been placed on the firm jury list on May 9, 2001; and his case initially had been placed on the pretrial docket on June 13, 2001, but was returned to the firm jury list on that same date. Leigh explained that, normally, the list of firm jury cases submitted by the state's attorney's office to the clerk's office would constitute the docket, and attorneys and pro se defendants on these cases would be called in to determine which cases were ready for trial. Leigh testified that during the time period when the defendant's case was pending, many cases were called for trial by the state, but his case had not been called until December 14, 2004. She also testified that no speedy trial motion had been filed in this case prior to the one then under consideration.

---

[5] General Statutes § 54-56 provides: "All courts having jurisdiction of criminal cases shall at all times have jurisdiction and control over informations and criminal cases pending therein and may, at any time, upon motion by the defendant, dismiss any information and order such defendant discharged if, in the opinion of the court, there is not sufficient evidence or cause to justify the bringing or continuing of such information or the placing of the person accused therein on trial."

The defendant testified that he had thought that his trial would begin on June 13, 2001, but that "it was conveyed to me somehow that this matter wasn't going to be pursued because I was already sentenced to the six years for the violation of probation [charges]." He also stated that the records from the June 13, 2001 court proceeding were unclear as to the status of his case, but that it was his recollection that the case had been either nolled or dismissed, and simply not recorded as such. Avitabile stated that he had been appointed as the defendant's special public defender in the present case on June 13, 2001, that there had been a pretrial conference that day that had failed to result in a plea agreement because the defendant maintained his innocence, and that the case had been restored to the firm jury trial list. Avitabile further stated that he could not speculate as to why the defendant believed that his case had been nolled or dismissed.

The court rejected the defendant's testimony as not credible, concluding that he had had sufficient experience with the legal system to know that cases do not "disappear." The court emphasized that the defendant had been represented by counsel who knew that the case had not been resolved and in fact had been placed on the firm jury trial list. The trial court further reasoned that the state's June 13, 2001 request that the case be moved to the firm jury trial list reasonably could be interpreted as a defense request for a continuance for trial based on the defendant's rejection of the state's offer to reach a plea agreement. The court also noted that the defendant's view of the meaning of § 54-142a (c) would eviscerate the purpose of the speedy trial provisions, which require some affirmative action by the defendant—action that the defendant had not taken in the present case.

The trial court thereafter denied the defendant's motion to construe the delay in holding the trial as a

nolle that would trigger § 54-142a (c). The court reasoned that § 54-142a (c) was "directed at prohibiting [the state] from attempting to get a defendant to serve time short of a conviction by simply placing a case on a jury docket and allowing it to stay dormant for the same amount of time . . . the person would get if the person had been convicted. It's to prohibit and prevent misconduct on the part of the [state], which is why it incorporates the statement [regarding] when the case has been on the firm jury docket for thirteen months at the request—and the [state] has requested a continuance. The court found that the length of the delay was not due to the misconduct or bad motive of the state. The court further found that, because the defendant did not accept the state's plea bargain offer regarding [the sex offender registry] charge and sought a trial, the case had been continued at his request. The court also intimated that the delay had been a strategy on the part of the defendant to enable him to make this claim. The court concluded that because the case had not been continued at the request of the state, § 54-142a (c) did not apply." (Internal quotation marks omitted.) *State* v. *Winer*, supra, 99 Conn. App. 582–83. The trial court also denied the defendant's motion to dismiss for lack of a speedy trial, concluding that the defendant had not moved for a speedy trial, nor had he demonstrated that he had been prejudiced appreciably by the state. In connection with that determination, the court observed that, perhaps there had been "some strategic disengagement [by the defense] as it relates to allowing the case to stay on the jury docket for an extended period of time without ever filing a motion for a speedy trial."

Thereafter, the defendant was tried and convicted by a jury on the charge of failure to comply with the sex offender registration requirements in violation of § 54-251 (a). The trial court subsequently denied the defen-

dant's motion for a new trial, motion for judgment of acquittal and motion in arrest of judgment, and sentenced the defendant to three years incarceration, execution suspended, and three years probation to run concurrently with the sentence he then was serving for violation of probation. An appeal to the Appellate Court followed.

The Appellate Court framed the issue on appeal as "whether the [trial] court properly concluded that § 54-142a (c) does not apply to the defendant's case and, more specifically, whether the [trial] court's finding that the defendant, not the state, had requested that the matter be continued is clearly erroneous." *State* v. *Winer*, supra, 99 Conn. App. 583. The court cited the June 13, 2001 statement by the state's attorney that the case was "going to remain on the firm trial list" and stated that "[a]lthough this statement effectively postponed the defendant's case and continued it to an indefinite time in the future, because the state did not explicitly request a continuance, it is not clear whether this is a continuance at the request of the state as contemplated in § 54-142a (c)." Id., 585. The Appellate Court determined that the language, "at the request of the prosecuting attorney," which had been added to § 54-142a (c) in 1981, did not have a clear legislative purpose. Id., 586. Looking to extratextual sources for guidance, the court concluded that § 54-142a (c) specifically was designed to protect speedy trial rights. Id., 586. In light of this interpretation, the common meaning of the term "continuance" and the failure of the state to advance the prosecution of the case, the Appellate Court concluded that the statement by the state's attorney on June 13, 2001, constituted a continuance at the request of the state as contemplated in § 54-142a (c). Id., 589–90. Accordingly, the Appellate Court reversed the judgment and ordered that the case be dismissed.[6]

---

[6] Although the defendant had raised other claims challenging his conviction, because the Appellate Court reversed the judgment and directed the

Id., 591. The state's certified appeal to this court followed.

The state contends that the Appellate Court misconstrued the intent of § 54-142a (c) as a speedy trial statute and hence misinterpreted and misapplied the statutory language included therein, "continued at the request of the prosecuting attorney" and "no prosecution," when concluding that the trial court's finding that the continuance had not been at the request of the state's attorney was clearly erroneous. Alternatively, the state contends that, even if the Appellate Court properly construed the defendant's case as having been nolled by implication pursuant to § 54-142a (c), the order dismissing the charge was not an appropriate remedy. Because we agree with the state as to its first claim, we do not reach its second claim.

The Appellate Court's determination as to the application of § 54-142a (c) to the defendant's case depended first on the meaning of that statute and then on the application of that interpretation to the facts of this case. "Accordingly, [t]he [threshold] issue before this court involves a question of statutory interpretation that . . . requires our plenary review. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambig-

_____

trial court to dismiss the charge against the defendant, it did not address his other claims.

uous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *State* v. *Bletsch*, 281 Conn. 5, 16, 912 A.2d 992 (2007). Neither party has claimed that the statute is plain and unambiguous as applied to the facts of this case.

Our starting point is the text of the statute at issue. Section 54-142a (c) provides in relevant part: "Whenever any charge in a criminal case has been continued at the request of the prosecuting attorney, and a period of thirteen months has elapsed since the granting of such continuance during which period there has been no prosecution or other disposition of the matter, the charge shall be construed to have been nolled as of the date of termination of such thirteen-month period . . . ." Although the Appellate Court focused on the meaning of the word "continuance" and whether a statement by the state's attorney had the *effect* of a continuance; see *State* v. *Winer*, supra 99 Conn. App. 585, 589–90; in our view, the most significant language is the specified action necessary to trigger the continuance—"at the *request* of the prosecuting attorney . . . ." (Emphasis added.) General Statutes § 54-142a (c).

The phrase "at the request" is not defined in the statute, and we therefore construe the term in accordance with "the commonly approved usage of the language . . . ." General Statutes § 1-1 (a); accord *Pasquariello* v. *Stop & Shop Cos.*, 281 Conn. 656, 665, 916 A.2d 803 (2007). The term "request" is defined as

"to need, seek for, inquire after . . . the act of asking for something (as an object, a favor or some action desired); an expression of a desire or wish . . . ." Webster's Third New International Dictionary; see also Black's Law Dictionary (6th Ed. 1990) (defining "[r]equest" as "to ask for something . . . to solicit"). These definitions militate in favor of the state's position that a request must be explicit, that is, the overt act of asking for a continuance. This interpretation is further supported when read in context with other language in § 54-142a (c), such as "granting of such continuance," which reflects an affirmative action by the court that is *responsive* to some overt action by the state.

It is clear that the state made no express request for a continuance on June 13, 2001, when, after a pretrial conference failed to result in an agreement, the state informed the court: "[The] case is going to remain on the firm trial list." Rather, the state made a single statement that simply reflected the existing status of the case, that it was, and would remain, on the firm jury trial list, exposing the case to trial at any time under the speedy trial provisions. See footnotes 10 and 11 of this opinion. Nor did the trial court render any ruling or order in response to that statement. Although the case had been placed on the firm jury trial list on May 9, 2001, it would strain reality to view the state's action *allowing* the case to remain on that list in June, 2001, as "no prosecution" within the meaning of § 54-142a (c), particularly when it was on that day that the court first appointed the defendant an attorney. Nothing that occurred at that time signified an abandonment of, as opposed to a commitment to, prosecution. Indeed, to suggest otherwise would require every firm jury list case to be called daily, in contravention of Practice Book § 44-16.[7]

---

[7] Practice Book § 44-16 provides: "(a) The judicial authority shall assign for trial on dates certain so much of the trial list as shall be deemed necessary for the proper conduct of the court and shall direct the clerk to distribute

We turn next to the legislative history and purpose of § 54-142a (c). The Appellate Court acknowledged that when the legislature substituted the operative language "at the request of the prosecuting attorney"; see Public Acts 1981, No. 81-218, § 1; it made scant reference to the purpose for this change.[8] *State* v. *Winer*, supra, 99 Conn. App. 586. The court therefore turned to the statute "as a whole" and concluded that, because § 54-142a (c) was intended to advance speedy trial protections, the court's focus should be on whether the state actively had pursued its prosecution of the defendant's case and whether the state's action affected the time in which the defendant was brought to trial. Id., 586–90. We disagree with the lens through which the Appellate Court viewed the statute.

As the discussion that follows demonstrates, from its inception, § 54-142a has addressed the recording of nolles and later, the erasure of criminal records, both of which being administrative rather than substantive

---

a list of the cases so assigned to the counsel of record. Cases shall be assigned for trial in the order in which they appear on the trial list and they should be tried in the order in which they are assigned for trial, except that the judicial authority may depart from the listed order and may give priority in assignment or trial to the following types of cases:

"(1) Cases in which the defendant is being held in custody for lack of a bond;

"(2) Cases in which the judicial authority has granted a motion for a speedy trial; or

"(3) Cases in which the judicial authority reasonably believes that the pretrial liberty of the defendant presents unusual risks over those of other criminal cases.

"(b) The judicial authority shall not assign for trial on a date certain a number of cases greater than that which can be reasonably expected to be reached for trial on that date, based on the court's resources for trial and the number and percentage of trials generally conducted."

[8] The legislature substituted the operative language "at the request of the prosecuting attorney" for the phrase "in the superior court, or in the court of common pleas . . . ." Public Acts 1981, No. 81-218, § 1; see also General Statutes (Rev. to 1981) § 54-142a (c) ("[w]henever any charge in a criminal case has been nolled in the superior court, or in the court of common pleas").

in intent. See General Statutes § 54-142a (a) and (b).[9] The statute encouraged the docketing of cases to prevent dormancy, promoted the efficient flow of cases through the court system, and created a procedure to erase by operation of law those cases that were lost or forgotten. Unlike the detailed speedy trial provisions enunciated by statute or rules of practice; see General Statutes §§ 54-82c, 54-82d, 54-82*l* and 54-82m;[10] Practice

[9] General Statutes § 54-142a provides in relevant part: "(a) Whenever in any criminal case, on or after October 1, 1969, the accused, by a final judgment, is found not guilty of the charge or the charge is dismissed, all police and court records and records of any state's attorney pertaining to such charge shall be erased upon the expiration of the time to file a writ of error or take an appeal, if an appeal is not taken, or upon final determination of the appeal sustaining a finding of not guilty or a dismissal, if an appeal is taken. Nothing in this subsection shall require the erasure of any record pertaining to a charge for which the defendant was found not guilty by reason of mental disease or defect or guilty but not criminally responsible by reason of mental disease or defect.

"(b) Whenever in any criminal case prior to October 1, 1969, the accused, by a final judgment, was found not guilty of the charge or the charge was dismissed, all police and court records and records of the state's or prosecuting attorney or the prosecuting grand juror pertaining to such charge shall be erased by operation of law and the clerk or any person charged with the retention and control of such records shall not disclose to anyone their existence or any information pertaining to any charge so erased; provided nothing in this subsection shall prohibit the arrested person or any one of his heirs from filing a petition for erasure with the court granting such not guilty judgment or dismissal, or, where the matter had been before a municipal court, a trial justice, the Circuit Court or the Court of Common Pleas with the records center of the Judicial Department and thereupon all police and court records and records of the state's attorney, prosecuting attorney or prosecuting grand juror pertaining to such charge shall be erased. Nothing in this subsection shall require the erasure of any record pertaining to a charge for which the defendant was found not guilty by reason of mental disease or defect. . . ."

[10] General Statutes § 54-82c (a) provides in relevant part: "Whenever a person has entered upon a term of imprisonment in a correctional institution of this state and, during the continuance of the term of imprisonment, there is pending in this state any untried indictment or information against such prisoner, he shall be brought to trial within one hundred twenty days after he has caused to be delivered, to the state's attorney or assistant state's attorney of the judicial district or geographical area, in which the indictment or information is pending, and to the appropriate court, written notice of the place of his imprisonment and his request for final disposition to be made of the indictment or information. . . ."

Book §§ 43-39 and 43-40;[11] which provide explicit mandates, § 54-142a (c) does not require that a *trial* commence within a specific time period to protect a defendant. Rather, "[§ 54-142a] appears to be directed . . . to circumstances in which the state obtains an initial continuance and then completely ignores the case for thirteen months." *State* v. *Troynack*, 174 Conn. 89, 95, 384 A.2d 326 (1977). That statute requires only that, if a case is continued at the request of the state's attorney, in order to prevent a charge from being construed as nolled, some prosecution must occur within thirteen

General Statutes § 54-82d provides: "If an action is not assigned for trial within the period of time as provided in section 54-82c, no court of this state shall any longer have jurisdiction thereof, nor shall the untried indictment or information be of any further force or effect, and the court shall enter an order dismissing the same."

General Statutes § 54-82*l* requires the judges of the Superior Court to make speedy trial rules similar to those under § 54-82m for persons charged with a criminal offense on or after July 1, 1983, but before July 1, 1985.

General Statutes § 54-82m provides in relevant part: "[T]he judges of the Superior Court shall make such rules as they deem necessary to provide a procedure to assure a speedy trial for any person charged with a criminal offense on or after July 1, 1985. Such rules shall provide that (1) in any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of a criminal offense shall commence within twelve months from the filing date of the information or indictment or from the date of the arrest, whichever is later, except that when such defendant is incarcerated in a correctional institution of this state pending such trial and is not subject to the provisions of section 54-82c, the trial of such defendant shall commence within eight months from the filing date of the information or indictment or from the date of arrest, whichever is later; and (2) if a defendant is not brought to trial within the time limit set forth in subdivision (1) and a trial is not commenced within thirty days of a motion for a speedy trial made by the defendant at any time after such time limit has passed, the information or indictment shall be dismissed. Such rules shall include provisions to identify periods of delay caused by the action of the defendant, or the defendant's inability to stand trial, to be excluded in computing the time limits set forth in subdivision (1)."

[11] Practice Book §§ 43-39 and 43-40 provide the rules of procedure mandated under General Statutes § 54-82m. Section 43-39 sets forth the speedy trial rules, and § 43-40 sets forth a detailed, but nonexhaustive, list of circumstances constituting "delay[s] caused by the action of the defendant, or the defendant's inability to stand for trial, to be excluded in computing the time limits [within which the trial must commence pursuant to § 43-39]." General Statutes § 54-82m.

month intervals. It does not mandate a speedy trial within thirteen months. The defendant's protection against indefinite prosecution is found elsewhere. See footnotes 10 and 11 of this opinion. Indeed, in the present case the defendant conceded to the trial court that there would have been no basis to nolle the case if it had been docketed on the jury list every few months.

As this court previously has explained, "[t]he erasure provisions of § 54-142a (c) have their origins in legislation enacted in 1963. Prior to 1963, General Statutes (1958 Rev.) § 54-90, which is the statutory progenitor of § 54-142a (c), provided simply that whenever a criminal case was nolled, 'the clerk of the court shall make a record of such nolle.' In 1963, § 54-90 was amended by No. 482 of the 1963 Public Acts, which required that the clerk also record not guilty findings, and provided that, upon a nolle or not guilty finding, 'the court . . . upon petition of the arrested person or his heirs, may order all police and court records and records of the state's or prosecuting attorney pertaining to such case to be erased, provided at least three years have elapsed from the date of arrest.' A petition to the court and court action were thus required for erasure of records in cases in which either a nolle or a not guilty finding had been entered." *Cislo* v. *Shelton*, 240 Conn. 590, 599–600, 692 A.2d 1255 (1997).

In 1972, the legislature added the provision applicable to continued cases in what is now subsection (c) of § 54-142a. See Public Acts 1972, No. 20, § 2. Representative John A. Carrozzella, acting chairman of the judiciary committee, which had sponsored the bill thereafter enacted as Public Act 1972, No. 20, described this provision as essentially advancing an administrative, housekeeping objective in disposing of lost cases

from the old municipal courts.[12] 15 H.R. Proc., Pt. 1, 1972 Sess., pp. 84–85. These comments strongly reinforce that the amendment, like the existing scheme to which it was added, simply was designed to prevent the indefinite postponement of criminal cases in order to improve efficiency in the flow of cases through our judicial system, not to provide new substantive protections for defendants.

We recognize that, in *Cislo* v. *Shelton*, supra, 240 Conn. 599, this court stated otherwise, noting that "the legislature specifically designed § 54-142a (c) in order to avoid the speedy trial violations that the legislature feared otherwise might occur. That fear was based on its interpretation of the decision of the United States Supreme Court in *Klopfer* v. *North Carolina*, 386 U.S. 213, 87 S. Ct. 988, 18 L. Ed. 2d 1 (1967)." In retrospect, however, it is clear that this statement was misguided. First, in reaching this conclusion, the court in *Cislo* had relied on one legislator's statement that was made two years after the addition of subsection (c) to § 54-251 by Public Acts 1972, No. 20, and that is unsupported by any evidence in the legislative history or text of that act itself. See *Cislo* v. *Shelton*, supra, 606 n.23, 607. Thus, the court should not have ascribed an intent to the legislature generally because of one legislator's retrospective interpretation of the motivation behind the 1972 amendment, especially when such an interpretation is not consistent with express statements in the pertinent legislative history. See footnote 12 of this opinion. Second, that legislator misinterpreted *Klopfer* and any concomitant need to amend our statutes to provide speedy trial protections in accordance with that

---

[12] Representative Carrozzella stated: "I might point out that [§] 2 of the bill also amends our existing and erasure statute relative to cases in the old municipal court that were continued . . . . Those cases in the old municipal court were continued . . . and ultimately just got lost. There is no provision in the law to have those cases erased. This would provide for those cases to be erased as well." 15 H.R. Proc., Pt. 1, 1972 Sess., p. 85.

case. In *Klopfer* v. *North Carolina*, supra, 214, 217–18, 221–22, the defendant's case had been nolled over his objection and without justification, and under North Carolina's procedure, the nolle left the defendant subject to a statute of limitations that had been tolled and with no procedural mechanism to obtain a dismissal. Because the defendant had been left without any means to effectuate his speedy trial rights, the United States Supreme Court determined that the procedure violated the defendant's speedy trial rights. Id., 222.

It is clear that *Klopfer* presented a unique situation because the nolle without leave procedure under North Carolina's scheme was tantamount to a pending charge, thereby implicating speedy trial protections, unlike the entry of a nolle.[13] In Connecticut, after a nolle prosequi

---

[13] In Connecticut, a nolle may enter either by operation of law pursuant to a proper application of § 54-142a (c) or expressly at the request of the state pursuant to General Statutes § 54-56b, which, although not itself a speedy trial guarantee, provides the defendant with the ability to compel resolution of his case, even without the speedy trial provisions. See *State* v. *Talton*, 209 Conn. 133, 140–41, 547 A.2d 543 (1988) ("We believe that the only reasonable construction to be placed on § 54-56b is that it is sui generis and was enacted by the legislature in order to ensure finality to a criminal defendant when the state indicates that it is unable to proceed with a prosecution. That finality is achieved by allowing a defendant to 'demand' a trial or a dismissal if the state attempts to enter a nolle and the state is unable to make the necessary representations to the court that would allow a nolle to enter.").

The defendant in the present case did not seek a dismissal pursuant to § 54-56b. Rather, the defendant chose to seek a dismissal pursuant to § 54-56, alleging insufficient cause to justify the continuing of the information. That statute empowers a court to dismiss a case only in the most compelling circumstances. *State* v. *Kinchen*, 243 Conn. 690, 703–704, 707 A.2d 1255 (1998) ("Because discretionary prosecutorial decisions, including the decision whether to proceed to trial, ordinarily are unreviewable by the court absent a showing of prosecutorial impropriety, the power to render a dismissal under § 54-56 for insufficient cause is to be sparingly exercised and then only with great caution and awareness of the probable consequences. . . . In order to ensure that this discretion is exercised in accordance with these principles, it is essential for the court explicitly to weigh all the competing factors and considerations of fundamental fairness to both sides—the defendant, the state and society, and presumably the victim. . . . Thus, a trial court's invocation of its authority to dismiss a case under the

has been entered, the statute of limitations continues to run and a prosecution may be resumed only on a new information and a new arrest. Indeed, contrary to the statement in *Cislo*, this court expressly has recognized the distinction between the effect of a scheme like that in North Carolina and our own. See *State* v. *Anonymous (1975–2)*, 32 Conn. Sup. 501, 503–504, 337 A.2d 336 (1975) ("Under North Carolina law, the attorney for the state could have the case, which had been nolled, restored to the docket for trial, and in the meantime the [s]tatute of [l]imitations remained tolled. Connecticut law is different. Here the [s]tatute of [l]imitations runs, and prosecution may be resumed only on a new information and a new arrest. General Statutes § 54-193 . . . ." [Citation omitted.]); *State* v. *Ackerman*, 27 Conn. Sup. 209, 211, 234 A.2d 120 (1967) ("A nolle prosequi, when unconditionally entered, is a dismissal of indictment, and no conviction can be had except by beginning a new case against the accused. . . . Nolle prosequi is nothing but a declaration of the prosecuting officer that he will not prosecute the suit further at that time. . . . Upon the entering of a nolle prosequi by the state's attorney, there is no case. The defendant is released from custody and is free to come and go as he pleases. In this case, the defendant was a free man, privileged to return to his state of residence and with no restrictions whatsoever. The defendant was not deprived of his right to [a] speedy trial, as upon the entry of a nolle prosequi there was no case pending against him. No plea had been entered by the defendant, and no trial had been started." [Citations omitted.]). Therefore, the legislator's comments made two years

insufficient cause prong of § 54-56 can be justified only when: (1) the court expressly and carefully has considered all of the relevant competing factors; and (2) dismissal is supported by overriding equitable considerations." [Citations omitted; internal quotation marks omitted.]). The defendant does not claim that the trial court abused its discretion when denying his § 54-56 motion.

after the erasure provisions had been enacted reflected a misunderstanding of *Klopfer* and overlooked other provisions of our scheme; hence, our reliance on those comments in *Cislo* v. *Shelton*, supra, 240 Conn. 599, upon which the Appellate Court reasonably relied in the present case, was misplaced.

Finally, we note that we also are not inclined to adopt the Appellate Court's interpretation of § 54-142a as a speedy trial statute because that interpretation not only would be inconsistent with §§ 54-82c, 54-82d, 54-82*l* and 54-82m in terms of the finality they provide and the specific procedural requirements imposed upon defendants; see footnote 10 of this opinion; but it actually would undermine those provisions by allowing a defendant to circumvent the requirements that he give notice of his demand for a speedy trial. "When the legislature amended the bill underlying the speedy trial rule [§ 54-82m] to require that defendants affirmatively trigger the dismissal provision of the statute by moving for a speedy trial at the end of the twelve month period, it did so with the intent that the defendant's motion would alert both the court and the state that the clock was running and that, to avoid dismissal of the charges, the defendant would have to be afforded a trial within thirty days. See [25 H.R. Proc., Pt. 18, 1982 Sess.], pp. 5768–70, remarks of Representative Christopher Shays and Representative Robert G. Jaekle; id., p. 5806, remarks of Representative [Richard D.] Tulisano. The legislature recognized that institutional negligence might occur during the twelve month period, and that the defendant's speedy trial motion would remind the state that it must commence the trial within thirty days or face a dismissal. See id., pp. 5769–70, remarks of Representative Jaekle. In other words, the motion for a speedy trial is supposed to be the state's 'wake up call.' It is intended to '[give] the state another crack from preventing that individual from being set free.' Id., p. 5768,

remarks of Representative Shays." *State* v. *McCahill*, 265 Conn. 437, 451–52, 828 A.2d 1235 (2003).

In conclusion, the Appellate Court improperly construed § 54-142a (c) as a speedy trial statute and, accordingly, improperly determined that the state's conduct had triggered its nolle and erasure provision. The state's attorney did not request a continuance by stating to the trial court that the defendant's case would remain on the firm jury trial list. Therefore, the Appellate Court's order to the trial court to dismiss the charge against the defendant under § 54-142a (c) was improper.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to consider the defendant's remaining claims.

In this opinion the other justices concurred.